HIGHTOWER, Judge.
In these consolidated suits, Newt V. Mills and his wife, who sought to annul a judgment and to resist enforcement of an option to purchase, appeal a judgment rendered against them. For reasons herein expressed, we affirm.
BACKGROUND
This litigation has its origin in a five year lease confected in October 1971 and containing an option to buy. At that time, Mills supposedly leased 160 acres of land in Jackson Parish, known as the McClendon Place, to Jerry Adams.
After the expiration oi»the primary lease term, Mills filed an earlier suit on May 4, 1977, asking that the option to purchase be declared void and without effect due to Adams’ failure to timely exercise that provision. Mills also sought to evict Adams for a default in rental payments. Finding that Adams had substantially complied with the agreement and had appropriately attempted to exercise the option, the trial *1129 court rejected Mills’ demands, a judgment affirmed both by this court in an unpublished opinion, and by the Louisiana Supreme Court. See Mills v. Adams, 365 So.2d 1325 (La.1978).
On May 16, 1977, during the pendency of Mills’ eviction action, Adams commenced a suit for specific performance (presently before the court as No. 21,220-CA), praying that Mills be ordered to convey the property for the specified price of $72,000 in compliance with the option provision. Approximately two years later, in March 1979, after the Supreme Court decision in the eviction suit, Mills filed an answer contending that the lease in dispute was forged, that his agreement actually had been with another individual named Dellis Odom rather than Adams. Mills also interposed lesion beyond moiety as a defense, contending that the property, at the time the option supposedly was exercised, would have been sold for less than one-half its value. In addition, Mills reconvened for past due rent and damage to the premises. Finally, Mrs. Mills intervened in the litigation and averred that she actually owned the land as her separate property, and, as a result, Mills was without authority to enter into an agreement to sell with Adams.
Mills subsequently, on March 28, 1979, instituted suit (presently before the court as No. 21,221-CA) to annul the judgment, affirmed by the Supreme Court, in the eviction action. In particular, Mills contended that judgment was obtained by fraud and ill practices because the lease agreement, originally between him and Odom, had been forged or altered to appear as though he had leased the land to Adams. Mills now claims that, after he and Odom signed the document, he left it with a friend to be “notarized” and, when he picked it up, the lease was in an envelope which remained unopened for five years.
Mills claims to have been shocked when, upon viewing the instrument for the first time after its confection, he observed Adams’ name on the document rather than Odom’s. Yet, Mills asserts that he believed his signature on the lease to be valid at that time. However, despite what he perceived as the document’s questionable authenticity, Mills nevertheless proceeded to employ that instrument as the basis of his initial suit against Adams. He maintains it was only when he was preparing to defend the present suit for specific performance that he learned the notary’s signature had been forged, and that his own signature likely was not genuine. Such discoveries prompted the suit for annulment.
The suits were consolidated, and various exceptions (no cause of action, res judicata, and judicial estoppel) were interposed and referred to the merits. A lengthy trial was conducted during which the circumstances surrounding Mills’ lease of the McClendon Place were explored and expert testimony was presented regarding the alleged forgery. Subsequently, the judge, in a written opinion, found against Mills and his wife on all demands. The court concluded that Mills’ intellect and attention to detail made his version of the facts unlikely, even in light of the evidence he had presented. Similarly, the court opined that Mills could have convinced his witnesses that their recollection of events coincided with his.
Judgment in the proceedings was signed on March 13, 1989, dismissing the nullity action and ordering specific performance of the option clause of the lease contract. This appeal by Mills, principally concerning the forgery issue, followed. Mrs. Mills abandoned her intervention, and simply has joined in her husband’s appeal to protect any interest she has in the property at issue.
DISCUSSION
LSA-C.C.P. Art. 2004 provides as follows:
A final judgment obtained by fraud or ill practices may be annulled. An action to annul a judgment on these grounds must be brought within one year of the discovery by the plaintiff in the nullity action of the fraud or ill practices.
The jurisprudence interpreting that article sets forth two criteria to determine whether a judgment has been obtained by actionable fraud or ill practices: (1) when the circumstances under which the judg *1130 ment was rendered show the deprivation of legal rights of the litigant who seeks relief, and (2) when the enforcement of the judgment would be unconscionable and inequitable. Kem Search, Inc. v. Sheffield, 434 So.2d 1067 (La.1983); Gramm v. Brock, 430 So.2d 199 (La.App. 2d Cir.1983); Phillips v. Patin, 517 So.2d 190 (La.App. 1st Cir.1987); Allstate Ins. Co. v. Toups, 486 So.2d 304 (La.App. 3rd Cir.1986), writ denied, 489 So.2d 917 (La.1986). Thus, a party seeking to annul a judgment must satisfy both ends of the two requirements test.
The foregoing test was employed to decide an action to annul a judgment in Spencer v. Carroll, 506 So.2d 616 (La.App. 4th Cir.1987), a case factually analogous to the suit sub judice. There, Ms. Carroll moved to New Orleans with her father’s assistance and, needing only a six month lease, began to search for a place to live. She ultimately rented an apartment from Spencer and, in her father’s presence, signed a lease which provided for a six month term. Several days later, however, Carroll received a copy of the lease from Spencer which, although still specifying a six month duration, stated in a different portion of the instrument that the term commenced on June 20, 1985 and ended on June 20, 1986.
Five months after entering into the lease, Carroll decided to move, and she so notified her lessor. Suit was then filed for the remainder of the rent due under what Spencer alleged to be a twelve month lease. Carroll was personally served with the petition to which a copy of the lease was attached. She took no action to defend the suit, and a default judgment was rendered against her for the balance due under a twelve, rather than six, month lease.
Maintaining the judgment was obtained by fraud or ill practices, Carroll instituted a nullity proceeding. Specifically, she contended that, on the copy of the lease with which she was served, a line had been drawn through the words “six months” and that “twelve months” had been added. In essence, Spencer had secured a judgment for an excessive amount through the use of an altered contract.
The trial court dismissed Carroll’s suit, and the Fourth Circuit affirmed. Finding no deprivation of any of her legal rights, the court noted that Carroll had been served with a copy of the agreement which she would later claim to have been altered. Possessed of the document whose provisions she disputed, Carroll chose not to raise the alleged alterations in Spencer’s suit for rent due.
The procedural posture of the parties in the case at bar varies from that of the Spencer litigants. In Spencer, the plaintiff prevailed by suing under an instrument later asserted, by the party cast in judgment, to have been altered. On the other hand, Mills based the entirety of his previous, unsuccessful suit on a document now claimed by him to be bogus. Yet, this difference in the parties’ positions buttresses, and makes more persuasive, the application of the Spencer rationale here. Unlike Ms. Carroll, Mills, as plaintiff in the eviction suit, had complete control over the decision to litigate under the lease. If Ms. Carroll was denied annulment relief merely because she was served with the “altered” lease and could have asserted any irregularities in defense, then Mills, who possessed the allegedly invalid document at all times and elected to sue despite his reservations, clearly likewise should be denied relief.
As previously mentioned, Mills now states that he was puzzled upon first seeing Adams’ name on the lease when preparing for the eviction suit. One would think that a lessor would, at a minimum, be aware of his lessee’s identity. During the term of the lease, Mills had been accepting rental payments from Adams, whom he knew to possess the property. Despite such an easily perceived irregularity, Mills elected to sue, incorporating the purportedly sham lease by reference into his verified petition, thus availing himself of the document as his weapon of eviction. Only after receiving an adverse decision from the Supreme Court did he investigate his misgivings about the document and at *1131 tempt to nullify the judgment because of forgery.
Just as, prior to a default judgment being taken, the lessee in Spencer easily could have discerned any alteration of the document upon which the suit was based, Mills similarly could have allayed his misgivings and satisfied himself of the subject instrument’s legitimacy before proceeding with the suit. Having possessed the agreement upon which his earlier action was based, and having persevered in litigation to the Supreme Court despite alleged uncertainty over the very identity of the parties to the lease, Mills was deprived of no legal rights. Moreover, enforcement of the judgment is not unconscionable or inequitable. Thus, Mills has failed to establish that the previous judgment arose through fraud or ill practices.
We have examined the record and find that the action of the trial court is proper in all other respects.
CONCLUSION
For the foregoing reasons, the judgment appealed is affirmed. All costs are to be borne by appellant.
AFFIRMED.