CIACCIO, Judge.
On December 6, 1990, Gordon & Osie Francois (Francois) domicilaries of the State of Georgia, filed a petition to annul a default judgment rendered against them on May 17, 1990. The judgment was in the amount of $20,017.00 plus $1,500.00 attorneys’ fees. The judgment further declared the nullity of a lease and option agreement they had granted on their former residence in New Orleans.
Francois alleged that the judgment had been obtained by ill practice, C.C.P. art. 2004, on the part of plaintiff, N.A. Simmons & Associates, Inc., a professional law corporation, and its counsel of record, Norbert A. Simmons.
On January 11, 1991, the trial court dismissed the petition to annul the judgment and granted petitioner time to file for writs.
On April 18, 1991, because of allegations of irreparable injury and the appearance that a gross miscarriage of justice had taken place, we granted writs of certiorari and review, stayed all proceedings in the trial court and stayed the imminent judicial auction of petitioners’ property.
On February 26, 1990, Simmons & Associates, Inc. (a/k/a N.A. Simmons & Associates) filed suit for breach of a lease and option agreement regarding a residence located in the City of New Orleans. The defendants, Gordon & Osie Francois, were the owners of the home and it was alleged that they were domiciled in Orleans Parish but with a residence in Stone Mountain, Georgia. Norbert A. Simmons, attorney at law, was named as attorney of record for his corporation.
After service was made upon defendants, their counsel of record, Irving B. Shnaider, attorney at law, obtained an order for a 30 day extension to file responsive pleadings.
On March 13, 1990, Simmons filed a motion to deposit into the registry of court the rental payments owed and to become due under the lease agreement and the trial judge, ex parte, signed the order allowing the rental payments to be deposited in the registry of court subject to supervision by the Clerk of the Civil District Court.[1]
On March 26, 1990, defendants filed dec-linatory and dilatory exceptions of insufficiency of service, vagueness and non-join-der of a necessary party plaintiff.
At the same time defendants filed a motion to withdraw the rental payments from the registry of court alleging the necessity of receiving these funds to meet their mortgage payment, or, in the alternative, that out of each monthly payment of $1,100.00 being deposited in the registry of court, that the Clerk be ordered to pay $998.00 directly to the mortgage holder.
Although defendants had filed their exceptions on March 26, 1990, within the time period granted by the court, Simmons filed a motion for a preliminary default on April 16, 1990 and apparently obtained a certificate from a deputy clerk of court that, as of April 16, 1990, according to the records of the office, nothing had been filed by the defendants. This motion was signed by *761 Norbert Simmons. The motion was properly denied by the trial court because of the pending exceptions. On April 27, 1990, Simmons filed an opposition to the motion to withdraw the funds.
On April 27, 1990, hearing was held on the exceptions and motion, after which the trial court ruled orally from the bench, dismissing all of the exceptions and denying defendants’ motion to withdraw the funds.
On May 14,1990, Simmons & his co-counsel, Ivy J. Prout, again filed a motion for preliminary default and it was entered on that date by the minute clerk.
On May 23, 1990, defendants’ counsel filed an answer on their behalf. However, in the interim, Simmons had come into court on May 17, 1990 and had obtained a default judgment for $20,017, attorneys’ fees of $1,500.00 and a judgment declaring the lease and option agreements of September 1, 1989 to be null and void. On June 22, 1990, before the delays for filing a suspensive appeal had run, and in violation of C.C.P. art. 2252, Simmons prematurely obtained orders for garnishment of defendants’ funds with various banks, mutual funds and mortgage companies.
On July 9, 1990 Simmons filed a petition for injunctive relief alleging his continued possession of defendants’ home, his need to retain possession to protect his interest in the property, that defendants’ would either interfere with his possession or seek to evict him, and requesting the court to enjoin the defendants from evicting him before his judgment was satisfied. Ex parte, a temporary restraining order was issued, without bond, as prayed for.[2]
On December 6th, 1990 defendant, through new counsel, filed a petition to annul the default judgment on the grounds of ill practice under C.C.P. art. 2004.
Counsel for petitioners alleged that at the conclusion of the trial on the exceptions held on April 27, 1990 the trial court granted to Irving B. Shnaider three (3) additional weeks within which to file responsive pleadings although this language does not appear in the judgment dismissing the exceptions. Petitioners further alleged that Simmons obtained the default judgment without notifying opposing counsel who was attorney of record and who had appeared in open court on the hearing for exceptions and, further, that the judgment was obtained prior to the expiration of the time delay granted for the filing of the answers. In the alternative, the petitioners alleged that had Simmons been unaware that the extension of time had been granted, that the judgment should nevertheless be annulled because it resulted in the deprivation of the legal rights of the litigants.
On January 11, 1991, trial was held on the merits of the petition to annul the judgment. Irving B. Shnaider and Norbert A. Simmons were the only witnesses who testified during the hearing. Shnaider testified as follows:
1. He had been retained by Mr. and Mrs. Francois to defend the lawsuit.
2. That he filed exceptions on their behalf and argued them before the trial judge.
3. At the conclusion of the arguments, the trial judged ruled from the bench, dismissing all exceptions, whereupon Shnaider and Simmons who had been seated at the counsel table, and the trial judge all got up to leave. Shnaider asked the trial judge if she wanted him to prepare a judgment, to which she replied “NO”, whereupon Shnaider requested three weeks to file responsive pleadings to which she replied “YES”; that the judge was in the process of leaving the bench when this exchange took place; that Simmons had left the counsel table and was still in the courtroom when the request for and the granting of the extension took place.
4. That Shnaider joined Simmons in the hallway adjacent to the courtroom and discussed a possible settlement of the case and that Simmons offered a settlement figure but Shnaider could not give a response until he had discussed the proposal in detail with his clients. Shnaider requested that Simmons put his *762 settlement proposal in writing to be communicated to Shnaider’s clients for their acceptance or rejection.[3]
5. That an exchange of correspondence took place beginning May 2, 1990, copies of which were filed into evidence. On May 2, 1990 Shnaider sent a letter to Simmons offering to cancel the lease and have his clients pay the sum of $3,000.00 in full settlement of the lawsuit. On the same date Simmons addressed a letter to Shnaider which Shnaider did not receive until May 17th, wherein Simmons requested the payment of $19,540.00 in settlement or a reduction of the option price, a reduction of the monthly rental and a waiver of his other claims. On May 17 Shnaider wrote to Simmons acknowledging receipt of the offer which he had forwarded to his clients in Atlanta, and requesting that the offer be held open until receipt of their reply before the end of the month. A copy of the letter of transmittal to Mr. and Mrs. Francois dated May 17, 1990 was filed in evidence.
6. On May 30, 1990, Shnaider sent a letter to Simmons advising him that Simmons’ proposal had been rejected by Mr. and Mrs. Francois and offering new proposals on their part by way of a cash settlement and amendment of the option agreement. Shnaider advised Simmons that he would be out of town attending the Bar Convention from June 4th through June 8th and he requested a reply from Simmons no later than June 15, 1990.
7. On June 14, 1990 Simmons sent a counterproposal to Shnaider which he received on June 15, 1990 wherein Simmons stated “This is a final offer to be accepted or rejected as a whole by June 21, 1990”; that Shnaider called Simmons on June 26, 1990 for clarification of the terms of the offer and at no time during that conversation did Simmons mention that he had already secured a default judgment or that he had taken action to execute on the default judgment that he had already obtained without the knowledge of Shnaider.
8. On June 26, 1990 Shnaider sent a letter to Simmons advising him that the offer contained in his letter of June 14, 1990 had been rejected and making formal demand upon Simmons to deposit into the Registry of Court the monthly rentals for the months of April, May and June.
9. On June 27, 1990, Simmons sent a letter to Shnaider acknowledging the refusal of his last offer and making demand for payment of $21,803.00. That nowhere in the demand letter is any mention made of the judgment already having been obtained.
10. That Shnaider had filed an answer on May 23,1990, during the course of the above described negotiations and that at no time was he ever advised that a default judgment had been taken several days prior to his answer being filed.
On cross-examination Shnaider testified that after becoming aware of the existence of the judgment in July of 1990 that he telephoned Simmons, expressed his shock, dismay and his belief that the default judgment was clearly in violation of the settlement negotiations that had been ongoing and that he did not appreciate someone who practiced law by ambush. Shnaider further testified that he had been intentionally misled by Simmons who withheld information regarding the obtaining of the default judgment to seek an advantage over Mr. and Mrs. Francois.
The trial judge did not recall the granting of the extension of time to file the answer nor was it reflected in her minutes but the docket sheet for that day indicated that thirty (30) day extensions had been routinely given in other matters on the docket.
Simmons testified that he had no recollection of the trial judge granting the extension of time to file an answer. He *763 admitted that he prematurely had attempted to take a default judgment in April which was denied. He admitted the settlement discussions with Shnaider had taken place. On cross-examination he acknowledged his attempt to take a default judgment shortly after the dismissal of the exception under the belief that an answer was due immediately upon denial of the exceptions. When questioned as to whether or not it was his intention to take unfair advantage of his opposing counsel, his answer was “Under those circumstances I think the unfair advantage was the lawyer’s fault.” He admitted that he had nothing in his records to verify that he had notified Shnaider that he had taken a default judgment. At the conclusion of the cross-examination Simmons was asked if he had any recollection of telling or writing to Shnaider to inform him of his intention to take a default judgment on May 17, 1990 to which he responded “No, nor did I ever presume it my responsibility to tell him that”.
The only conflict in the testimony of Shnaider and Simmons is with regard to whether the extension of time was granted. However, the testimony is undisputed that Simmons, who was acting as his own attorney of record, knew that Shnaider represented the defendants, appeared in court to argue the exceptions filed by Shnaider, almost immediately entered into settlement negotiations with Shnaider, both verbal and written, and during the course of these negotiations lulled Shnaider into believing that there was no necessity for the immediate filing of an answer. It is also undisputed that Simmons never advised Shnaider that he had taken the default judgment while negotiations were taking place and felt no ethical or moral compunction to do so.
Simmons knew that his claims against Mr. and Mrs. Francois were hotly contested and his actions in taking a default judgment while settlement negotiations were being conducted with opposing counsel prevented Mr. and Mrs. Francois from having an opportunity to appear and assert their defenses. This conduct constitutes deprivation of their legal rights, and enforcement of the judgment would be unconscionable and inequitable. Simmons’ confirmation of the default judgment without giving prior notice to opposing counsel constitutes an ill practice under the circumstances of this case and entitles the Francoises to have the default judgment annulled. Kem Search, Inc. v. Sheffield, 434 So.2d 1067 (La.1983).
For the reasons assigned the default judgment is annulled, the writ of fieri faci-as issued is vacated and recalled and defendants in the main demand, Mr. and Mrs. Francois, are granted fifteen (15) days within which to file supplemental pleadings and/or reconventional demands.
It is further ordered that all injunctions previously issued by. the trial court are vacated and annulled.
DEFAULT JUDGMENT ANNULLED, REMANDED FOR TRIAL ON THE MERITS.
ARMSTRONG, J., concurs in the result.

. We know of no provision of law, and none was cited in the motion, which authorized the granting of this order.

. We know of no provision of law, nor was any cited, authorizing this restraining order.

. During the entire settlement negotiations and subsequent to the entry of the default judgment Simmons continued to reside in the subject property despite the terms of the default judgment concerning his lease. His continued occupancy lends further credence to Shnaider's belief that no further action would be taken by Simmons during the settlement negotiations.