YELVERTON, Judge,
dissenting.
After having done the Smiths and Continental a favor by signing the joint motion to dismiss them from the case, and well before the motion was presented to the judge, counsel for the Jarreds and Watsons became concerned about whether the dismissal of a solidary tortfeasor might adversely affect the interests of his clients. He decided he had better withdraw his consent to the motion to dismiss. He communicated his change of mind to counsel for the Smiths-Continental, and counsel admittedly received that communication. Counsel for the Jarreds-Watsons also by letter to the clerk of court put in the record his clients’ withdrawal of their joinder.
Subsequently, despite these events, the joint motion was presented to the judge who, unaware of the change of position of the Jarreds-Watsons, signed the motion. At the hearing which gave rise to this appeal, the judge expressed his displeasure at being “dealt [with] less than fairly”. Nevertheless, believing that when counsel’s signature was affixed to the motion consent to dismiss was freely given, and that signing a joint motion to dismiss “falls pretty much in the same posture as a bank note”, he denied relief in this case. I think this was clear error.
This court affirms fearing that to permit the withdrawal of consent “given almost contemporaneously with his clients’ receipt of the funds, would open the door to abuse of legitimate agreements among counsel.” This language gives the impression that the Jarreds-Watsons settled with Continental for its $100,000 policy limits, and then reneged on an agreement to dismiss them. The appellee’s brief on this appeal helps foster this misunderstanding by stating that the money the appellants received from the clerk of court was a “cause” supporting the agreement to dismiss. That is not what happened. This was a concur-sus, not a settlement. Continental deposited its policy limits into the registry of court and asked for a concursus. By the making of the deposit, Continental was instantly relieved of all liability to all plaintiffs (defendants in the concursus) for the money so deposited. La.C.C.P. art. 4658. Continental did not need a dismissal from the lawsuit to accomplish that. There never was an agreement to dismiss the Smiths-Continental, let alone an agreement tied to the money on deposit in the concursus. There can be no strings attached to a con-cursus. The decision herein gives the con-cursus the effect of a settlement.
The consent of the Jarreds-Watsons to the motion to dismiss was gratuitous. The Smiths, on the other hand, were freed from further exposure and Continental was released from the obligation to further defend its insureds — with no benefit at all accruing to the Jarreds-Watsons. The ap-pellees’ brief makes the after-the-fact argument that the Jarreds-Watsons would benefit from dismissing the Smiths because the Smiths would then get on their side in the trial against the other defendants. There was no showing that this, or any other agreement, was made by these parties as some kind of “contract to dismiss”. Counsel for the Jarreds-Watsons signed the motion to dismiss only because he was asked to sign it and, at the moment, saw no harm in signing it.
In the light of the facts in this case there is only one question involved in this appeal. That is: can a party in a gratuitous motion to dismiss withdraw his consent, for good cause, before the judge signs the motion? The question almost answers itself. Until the judgment is signed, there is no dismissal. Moreover, the signing of the judgment is not a mere ministerial function. It is a judicial function, and therefore requires an adjudication. A judge who sees something unfair or wrong about a dismissal can refuse to sign such an order even if there is a joint motion. Surely a judge who is apprised that a party has withdrawn his consent, even though the signature on the joint motion is still present, should decline to dismiss, at least until he can determine *500 whether in fact the consent has been withdrawn, whether there was good reason for the withdrawal, whether some act in reliance on the signature has taken place such that withdrawal of consent would not be fair, and whether any other fact or circumstance exists that might help him decide whether to grant the dismissal or not. The trial judge in this case was clearly wrong when he said that signing a joint motion to dismiss “falls pretty much in the same posture as a bank note”.
In the present case the motion to dismiss was a misguided favor from the Jarreds-Watsons to Smiths-Continental. Before the motion was presented to the judge, it occurred to the attorney for Jarreds-Wat-sons that his clients’ joinder might prejudice them. He told the other side he wanted to withdraw, and why. The judge later signed the order relying on the face of the motion showing that it was a joint one. The lawyer who presented it did not tell the judge that one mover wanted out. There was a good reason for the withdrawal of consent. The Smiths-Continental would not have been prejudiced. The dismissal should be nullified. It was the product of an ill practice. A judgment rendered through some practice or procedure which operates, even innocently, to deprive the party cast in judgment of some legal right, where the enforcement of the judgment would be unconscionable or inequitable, should be nullified. Kem Search, Inc. v. Sheffield, 434 So.2d 1067 (La.1983).