LANDRIEU, Judge.
We are asked to determine whether a default judgment should be annulled for a vice of substance, that is, whether it was obtained by fraud or ill practice, as defined by the jurisprudence, and whether the seizure of mortgaged property was wrongful. Concluding that the judgment against the guarantors on a loan was obtained by an improper procedure which operated to deprive these defendants of their right to assert a defense to a suit on a note, we reverse that portion of the judgment against them. However, we conclude that the trial court did not err in finding that the seizure of the debtors’ mortgaged property was not wrongful.
FACTS AND PROCEDURE:
In 1977, Wilson Assavedo built a wooden vessel, the “Mitzi Lynne,” to be used primarily for inshore trawling and oyster dredging activities. Although the vessel itself was constructed with their own funds, Wilson and Dolores Assavedo borrowed money from the First National Bank of St. Bernard (hereinafter the “Bank”) to install the engine, rigging, and other equipment. When they sold the boat to their son and daughter-in-law, Lonnie and Rebecca Assavedo, in 1984, that original loan had not been satisfied. Therefore, as part of the purchase price of the vessel, Lonnie and Rebecca Assavedo executed a new promissory note in favor of the Bank in the amount of the remaining debt owed by the elder Assavedos. The hand note was secured by the pledge of a collateral mortgage note dated October 10, 1984 in the amount of $41,580.00, which was paraphed for identification with an Act of Preferred Ship Mortgage recorded at the U.S. Coast Guard Eighth District. At least initially, Wilson and Dolores Assavedo also remained as guarantors on the loan.[1] They testified that they were requested to and did co-sign each renewed hand note until 1988 or 1989.
The note in default was executed by Lonnie and Rebecca Assavedo on June 15, 1990. It was a demand note, payable in twelve, equal monthly installments of $642.00, with a thirteenth and final installment of the remaining balance on the loan. However, the loan had been renewed annu *1138 ally from its inception until 1991. Although arrearages on several occasions between 1986 and 1991 had neither prevented the renewal of the note nor resulted in foreclosure, the First National Bank of St. Bernard filed suit on May 21, 1991, on the note as well as on the continuing guarantee. Alleging that the January 15, 1991 and subsequent payments remained due and owing,[2] the Bank sought recognition of its mortgage and payment of the remaining principal balance plus contractual interest.
It is uncontested that service of the citation and petition was made on Wilson and Dolores Assavedo on May 26, 1991. Furthermore, Wilson and Dolores Assavedo were also served with a foreclosure suit filed several weeks earlier on their loan with the Bank, which was secured by a mortgage on their vessel, the “Lady D.” When Wilson and Dolores attempted to bring this loan current, they were allegedly told that it would be necessary to bring their son’s and daughter-in-law’s loan current as well. Dolores Assavedo reportedly informed the bank representative that there was no relationship between the loans, and the demand was ultimately withdrawn.
Although service on Lonnie and Rebecca Assavedo was disputed, testimony indicated that Lonnie learned about the foreclosure suit from his mother. At any rate, the younger couple contacted Rodney Loar, the asset manager at the Bank, after the suit was filed and worked out a repayment schedule to bring the loan current.
At the time of the “remodification,” the Assavedos owed six payments of $642.00 each, according to the Bank’s petition. They agreed to make an immediate lump sum payment of $3,000.00, to be followed by payments of $1,000.00 each week until the loan was current. When the $3,000.00 payment was made on June 18, 1991, Loar allegedly informed Lonnie Assavedo that “he would stop the lawsuit.”[3] Payments of $1,000.00 were made subsequently on July 1, July 8, and July 17, 1991. And, on August 27, 1991, after the preliminary default was confirmed, the next payment in the amount of $800.00 was tendered and accepted. Although the loan appears to have been overpaid with the application of the July installments, Loar testified without explanation that the loan never became current after the lawsuit was filed. Furthermore, the Bank provided notice of neither the workout nor the alleged failure of the workout to Wilson and Dolores Assave-do, who, as the purported guarantors, were not directly responsible for the repayment of the note.
Despite the negotiations between the creditor and primary debtors and the receipt of the initial payment of $3,000.00 in accordance with the workout plan, the Bank filed a motion for preliminary default on June 28, 1991, without further demand or notice. The default was confirmed on August 8, 1991 against all four defendants, after $6,000.00 had been paid toward the arrearages. The judgment confirming the default was amended on March 18, 1992 to correct the amount of the principal due. At that time, the Bank also requested that a writ of fieri facias issue. Defendants claim that the service of the notice of seizure pursuant to the writ first alerted them to the continuing existence of the lawsuit and the judgment against them.
On April 8, 1992, Lonnie and Rebecca Assavedo filed their petition to annul the judgment against them and to enjoin the seizure and sale of the mortgaged property. By a supplemental and amending petition, Wilson and Dolores Assavedo joined in the suit to annul the default judgment taken by the Bank. The trial court rendered judgment in favor of Lonnie and Rebecca Assavedo and annulled the judgment of August 8, 1991 (rather than the amended judgment of March 18, 1992), as to these defendants only, and recalled and set aside the seizure of the vessel. In the reasons for judgment, the court concluded, *1139 however, that the Bank should not be held in bad faith for relying on the sheriffs return in the record and, therefore, declined to grant attorney’s fees or damages.[4] They appeal that judgment.
DISCUSSION:
In accordance with La.Code Civ.Proc. art. 2004 (West 1990), a final judgment may be annulled if obtained by fraud or ill practice. The Louisiana Supreme Court, however, has found this article “sufficiently broad to encompass all situations wherein a judgment is rendered through some improper practice or procedure which operates, even innocently, to deprive the party cast in judgment of some legal right, and where the enforcement of the judgment would be unconscionable and inequitable.” Kem Search, Inc. v. Sheffield, 434 So.2d 1067, 1070 (La.1983). Thus, it is not limited to cases of actual fraud or intentional wrongdoing.'
To determine whether the judgment of August 8, 1991, as amended on March 18, 1992, should be annulled for such vices of substance, it is necessary that we find both that the litigant who seeks relief has been deprived of legal rights and that the enforcement of the judgment is unconscionable and inequitable. As noted by the Kem Search court, “[cjonduct which prevents an opposing party from having an opportunity to appear or to assert a defense constitutes a deprivation of his legal rights.” Specifically, such conduct was found to have occurred if a defaulted party had failed to respond to a lawsuit when he relied on facts reasonably believed to create an agreement to provide notice of any action to be taken. Id.
Although Lonnie and Rebecca Assa-vedo need not have entered an appearance in the lawsuit before service, it would no doubt have been prudent for Wilson and Dolores Assavedo to have filed responsive pleadings in the matter. However, they were certainly aware of their son’s workout agreement with the bank and his substantial payment toward the arrearage, if not repayment of the arrearages in full, after the suit was filed. In addition, since these defendants claim that they are no longer guarantors for the loan of Lonnie and Rebecca Assavedo and that there was apparent confusion by the Bank between their loan and that of their son, Wilson and Dolores Assavedo could have reasonably believed that the suit against them was filed in error. And it is undisputed that they received no further notice regarding its status until they were served with the notice of seizure of the “Mitzi Lynne.” Therefore, it was not unreasonable for them to assume that there was no need to defend the lawsuit.
Having found that Wilson and Dolores Assavedo failed to act due to their mistaken, but not unreasonable, impression that action was unnecessary, we conclude that enforcement of the judgment against them is unconscionable. They are entitled to an opportunity to raise their defenses to the suretyship relationship which they claim has expired and which, if still in existence by virtue of the 1988 Continuing Guaranty, may be extinguished by law after the various modifications and amendments to the principal obligation without their consent.
La.Code Civ.Proc.Ann. art. 2298 (West Supp.1993) permits the trial court to award damages, including attorney’s fees, in the event injunctive relief, prohibiting the sheriff from proceeding with the sale of seized property, is granted. The award occurs if the court finds the seizure to be wrongful. In this case, the defendants seek damages for the seizure of the “Mitzi Lynne” after the judgments against them have been annulled and the seizure set aside.
We conclude that the trial court did not err in refusing to award damages and attorney’s fees to defendants. The seizure of the “Mitzi Lynne” was based on the default judgment against Lonnie and Rebecca Assavedo, which was defective from the outset due to lack of service of process on these defendants, as required by law. The trial court reasonably found that the *1140 seizure based on the Bank’s reliance on the sheriff’s return in the record was not wrongful.
Accordingly, we reverse the judgment of the trial court and annul the amended default confirmation of March 18, 1992 as to Wilson and Dolores Assavedo. The trial court’s judgment as to Lonnie and Rebecca Assavedo is amended to reflect that the default confirmation properly annulled was dated March 18, 1992, and is affirmed on the wrongful seizure claim against the Bank. As affirmed in part, amended in part, and reversed in part, the matter is remanded to the trial court for further proceedings in accordance with this Court’s judgment.
AFFIRMED IN PART; AMENDED IN PART; REVERSED IN PART.

. A copy of an Act of Continuing Guaranty, dated November 10, 1988, by Wilson and Dolores Assavedo, was filed into the district court record as evidence of this obligation. They claim, however, that their guarantee on the loan was not intended to extend beyond "a couple of years and said then we wouldn't have to carry them any more and that would be all.”

. In fact, the transaction history on the loan indicated that the last payment on the note prior to foreclosure was credited on October 1, 1990.

. In fact, the bank admits that such a promise was likely. However, a distinction is suggested between "stop" and "dismiss,” a distinction which may have been lost on these fishermen.

. The defendants’ ("petitioners” in the suit to annul) motion for a new trial was denied.