817 So.2d 443 (2002)
Lesia BENTON, Plaintiff-Appellee,
v.
INTERNATIONAL PAPER COMPANY, Defendant-Appellant.
No. 35,977-WCA.
Court of Appeal of Louisiana, Second Circuit.
May 8, 2002.
Van Hoof & Associates by Kathryn Fowler Van Hoof, for Appellant.
Theodore J. Coenen, IV, Rayville, for Appellee.
Before NORRIS, STEWART and CARAWAY, JJ.
CARAWAY, J.
In this default judgment setting, the employer's representative attended the mediation conference required by the Workers' Compensation Act and signed a waiver of citation and acceptance of service. The mediation report of the Office of *444 Workers' Compensation ("OWC") was signed by the parties and the mediator and listed a "framework or plan for proceeding... in hopes of a resolution of the claim prior to trial." No additional report or notice pertaining to the mediation occurred. The employee therefore obtained a preliminary default without notice to the employer and confirmed the default before a workers' compensation judge ("WCJ"). The employer appeals, seeking to annul the default judgment. We reverse.

Facts
Claimant, Lesia Benton ("Benton"), was injured in a work-related accident on May 21, 2000, while she was an employee of International Paper Company ("IP"). The accident occurred while Benton was assisting a co-employee dismantle a steel pipe. The co-worker was working on a ladder, approximately 15 feet above Benton. The co-worker dropped a wrench; the wrench struck Benton on the upper lip. Benton's front tooth was knocked out of her mouth and her lip was cut. Benton received both medical and dental attention. Her upper lip was sutured, and her front tooth replaced. Benton recovered from her injuries, but claims that she has a disfiguring scar between her lip and nose that is circular in shape and approximately the size of a dime.
The record of the OWC shows the following pleadings and notices in chronological listing. The dates shown are the dates on the instrument unless the date of filing is stated. The OWC record fails to include a filing date stamp on each instrument, which leads to some minor disagreements in the interpretation of the record by the parties as noted below.
Benton filed a Form 1008 workers' compensation claim on May 14, 2001, asserting entitlement to 100 weeks of benefits under La. R.S. 23:1221(4)(p). The notices of mediation conference next appear in the record. The first notice sets the conference for June 5. The second notice resets the conference for June 14. Nevertheless, the conference was actually held on June 25 as shown below.[1] The notices indicate that IP was given notice as the employer and "Yvonne or Margaret," as the insurer.[2]
The OWC record next shows "Waiver of Citation and Acceptance of Service" forms which were signed by Yvonne R. Rosen and IP, by its agent, Maurice B. Marquis. The waivers are dated June 5, 2001.[3] The OWC's citation form reads, in pertinent part:
YOU HAVE BEEN SUED:
* * * *
You must either do what the claim form/petition asks, or, within fifteen (15) days after you have received these documents, you must file an answer or other legal pleadings with the Office of Workers' Compensation.

*445 If you do what the petition asks, or if you do not file an answer or legal pleadings within fifteen (15) days of receipt of this citation, a judgment of default may be entered against you without further notice....
The form also states that each party acknowledged "receipt of the disputed claim form ... and waives citation and accepts service, reserving all other rights and legal delays...."
The next record in the proceedings is the "Mediation Case Report." The report is signed by Doniele Staten, as mediator, Benton, IP, through its agent Marquis, and Rosen, for the "adjuster/insurance company." The report states that the mediation hearing was held on June 25. The OWC's mediation case report form allows the mediator to select one of several options regarding the outcome of the mediation conference, and Staten marked the form, in part, as follows:
 ___ Completely resolved. Parties
 reached acceptable resolution on
 all issues. Claim is dismissed.
 Agreement is attached.
 ___ Partially resolved. Parties
 reached acceptable resolution on
 some, but not all issues. Agreement
 is attached. Citations issued
 or waived.
 √ Procedural framework or plan for
 proceeding established with respect
 to some or all issues. A
 framework was established for an
 exchange of necessary information
 in hopes of a resolution of the
 claim prior to trial. Agreement is
 attached. Citations issued or
 waived.
 ___ Unresolved. No resolutions reached
 on substantive or procedural issues.
 No agreement attached.
 Citations issued or waived.
 ___ Mediation Conference Not Held.
 Failure to appear by ______ after
 due notice of conference. This
 case may be submitted to the
 judge for assessment of penalties
 against the party(ies) failing to
 appear; in addition, if claimant
 failed to appear, case may be submitted
 to the judge for dismissal,
 and if defendant(s) failed to appear,
 citations shall be issued, all
 in accord with L.R.S. 23:1310.3(2).
Service of Process made upon or accepted by Yvonne Rossen and Maurice Marquis for employer/insurer.

* * * *
At a mediation conference conducted by Doniele N. Staten, after a discussion of all the issues raised by claimant's case, the parties who have signed their names below agree to the following:
1. Insurer will contact their attorney to determine the viability of a PPD (scarring). If determined that claim is viable insurer will contact plastic surgeons for evaluation.
* * * *
The next record on file with the OWC is a letter dated August 17, 2001, by Benton's attorney, requesting entry of a preliminary default against IP. The August 27, 2001, Minutes of Court reflect that a preliminary default was entered ("PD entered") and noted that defendant "was served 6/5/01 no answer." A "Notice of Hearing on Rule to Show Cause" prepared by the OWC was filed September 6, 2001 and sent to Benton and her attorney, but not to IP. The notice set the confirmation hearing for September 24. Benton confirmed her default on September 24 as evidenced by the Minutes of Court. A Default Judgment was signed by the WCJ on September 25, 2001, which granted Benton benefits for her disfigurement. The "Notice of Signing of Judgment" was sent to IP on September 25 via certified mail.
*446 IP brings this appeal of the default judgment seeking its nullification.

Discussion
La. C.C.P. art. 2002(A)(2) provides that a final judgment shall be annulled if it is rendered against a defendant "whom a valid judgment by default has not been taken." It is well settled that this article applies to technical defects of procedure or form of the judgment. National Income Realty Trust v. Paddie, 98-2063 (La.7/2/99), 737 So.2d 1270. Such technical defects of procedure may be reviewed on appeal of the default judgment, and a reversal by the appellate court on the grounds of nullity may be rendered. Draper v. Draper, 554 So.2d 79 (La.App. 2d Cir.1989).
In three assignments of error, IP complains that the procedural safeguards for citation, service of process and notice of the conclusion of the mediation procedure under the Workers' Compensation Act (the "Act") were violated in this case, requiring annulment of the default judgment. To review these issues, three sources of law must be considered: the Act, the Louisiana Workers' Compensation Hearing Rules ("Hearing Rules") as authorized by La. R.S. 23:1310.1(C), and the Louisiana Code of Civil Procedure. Section 6601 of the Hearing Rules provides that "any practice or procedure not in conflict with either the Workers' Compensation Act or these rules will be guided by practice and procedure provided for in the Louisiana Code of Civil Procedure." Louisiana Administration Code ("LAC") 40:I.6601 (1999).
La. C.C.P. arts. 1201 and 1202 address the necessity in civil actions for citation which must provide the cited defendant with a statement "to comply with demands contained in the petition or make an appearance... under penalty of default." Without citation and service thereof, all proceedings are null. La. C.C.P. art. 1201(A). The defendant may expressly waive citation and service by any written waiver made part of the record. La. C.C.P. art. 1201(B).
The Act provides that upon receipt of the employee's claim form, the director of the OWC shall set the matter for a mediation conference within fifteen days. La. R.S. 23:1310.3(B)(1). The Hearing Rules then address the details of the mediation conference. LAC 40:I.5813 and 5817. These rules contemplate that notice of the time of the mediation conference is first given to the defendant by telephone and then confirmed by mail. LAC 40:I.5813(A). The employer in turn is to notify its workers' compensation insurer. LAC 40:I.5813(B). This notification of mediation is clearly distinguished from service of citation of the action, as shown by Sections 5817(A) and (D) of the Hearing Rules:
A. When it becomes apparent during the course of a mediation conference that agreement on all issues cannot be reached, the mediator shall issue a report stating the result of the conference and, at the initial conference, immediately issue citations to all defendants. The report shall be issued to the parties immediately following the conference or mailed within (5) days thereof.
* * *
D. If any proper party defendant is present or represented at the informal mediation conference, formal citation and service of process shall be made upon that defendant or its representative at that time....
These administrative rules appear to meet the procedural concerns of La. R.S. 23:1310.3(C), which states:

*447 Upon notice from the workers' compensation mediator that the parties were unable to resolve the dispute, service of process shall be effected on any named defendant in any manner provided by law or by certified mail. All subsequent pleadings requiring service shall also be served in any manner provided by law or by certified mail. A defendant shall file an answer within fifteen days of service of the form or within a delay for answering granted by the workers' compensation judge not to exceed an additional ten days.
Based upon the above procedural provisions, the record in this case clearly supports a finding that by the time of the conclusion of the mediation conference in this case on June 25, 2001, IP received notice of the mediation, attended the conference through its representative, Marquis, and executed a written waiver of service of citation. The waiver also expressly states that IP received the Form 1008 filed by Benton, which serves as the petition for her workers' compensation claim. We therefore reject IP's first contention that service of citation and the Form 1008 were required to be made on its registered agent for service of process as designated by IP in the records of the Louisiana Secretary of State. The process employed by the OWC through the time of the June 25 mediation, as shown in the record, demonstrates that proper citation occurred and the written waiver allowed by La. C.C.P. art. 1201(B) was made part of the record before the preliminary default. IP does not dispute that an authorized representative of the company attended the mediation and executed the waiver.
IP further complains that the procedural process resulted in "conflicting directions issued by" the OWC. It argues that, on the one hand, the citation advised IP to respond to Benton's claim under the threat of default while, on the other hand, the June 25 Mediation Case Report contains an agreement for the possible resolution of the claim after a future exchange of information. This argument has merit in view of the notice requirement set forth in the Act under Section 1310.3(C) quoted above, and the supreme court's ruling in Russell v. Illinois Central Gulf Railroad, 96-2649 (La.1/10/97), 686 So.2d 817.
The Russell ruling required the nullification of a default judgment where the defendants previously appeared in the suit proceedings. Although the finding of an "ill practice" regarding the default judgment in Russell can be factually distinguished, the principle underlying the ruling is applicable to this case. The court stated:
La.Code Civ. P. art.2004 "is not limited to cases of actual fraud or wrongdoing, but is sufficiently broad enough to encompass all situations where a judgment is rendered through some improper practice or procedure which operates, even innocently, to deprive the party cast in judgment of some legal right, and where the enforcement of the judgment would be unconscionable and inequitable." Kem Search, Inc. v. Sheffield, 434 So.2d 1067, 1070 (La.1983).
Russell, supra at 818.
The unique procedure under the Act mandates mediation, providing that the failure of the defendant to appear at mediation can result in sanctions issued by the WCJ. La. R.S. 23:1310.3(B)(2). IP participated in the mediation and effectively made an appearance in the suit by its attendance at the proceeding, its written waiver of citation and acknowledgment of receipt of the Form 1008, and its execution of the mediation report. Significantly, in the mediation report, the parties and the mediator did not list the outcome of the *448 mediation conference as being unresolved. Instead, the report states that "a framework was established for an exchange of necessary information in hopes of a resolution of the claim prior to trial." That "framework" involved a review by IP and its adjuster/insurer of the legal viability of a disfigurement claim under La. R.S. 23:1221(4)(p) and/or the possibility of referring claimant to a surgeon for plastic surgery. The report therefore elected not to end the mediation effort but to continue it. Nothing in the record thereafter reveals the outcome of any further efforts proposed by the mediation report.
Section 1310.3(C), quoted above, requires the mediator to give notice that the parties were unable to resolve the dispute. In this case, the record contains no such notice. To the contrary, the mediator reported a framework for possible settlement that was not concluded by the mediator before the default judgment. Under these circumstances, the procedure required by the Act was not followed to conclude the mediation effort. Without further notice to IP, the imposition of a default judgment amounts to a procedural ill practice as discussed in Russell, supra.
Moreover, as an additional procedural issue in this case, we note that the legislature, in response to the ruling in Russell, has amended La. C.C.P. art. 1702(A) to provide as follows:
... When a judgment of default has been entered against a party that is in default after having made an appearance of record in the case, notice of the date of the entry of the judgment of default must be sent by certified mail by the party obtaining the judgment of default to counsel of record for the party in default, or if there is no counsel of record, to the party in default, at least seven days, exclusive of holidays, before confirmation of the judgment of default.
Acts 2001, No. 512. Act 512 was passed in the regular session of the legislature on June 21, 2001, and therefore took effect on August 15, 2001, immediately prior to the proceedings for default in this case. La. Const. Art. 3, § 19. Act 512 was proposed on recommendation of the Louisiana State Law Institute and the official Comment for the Act provides:
(a) The purpose of the 2001 amendment to this Article is to conform default procedure to the rationale set forth in Russell v. Illinois Central Gulf Railroad, 686 So.2d 817 (La.1997), that it is an "ill practice" to confirm a judgment of default, without notice, against a party that has already filed pleadings constituting an appearance of record in the litigation proceedings.
(b) The words "appearance of record" are intended to have the same meaning as those words are used in Article 1671 and include filing a pleading such as any one or more of the exceptions, appearing at a hearing, and formally enrolling as counsel of record. See the 1997 Comment to Article 1671.
It appears to us that this new notice requirement of article 1702(A) would be applicable in this case, because IP participated in the mediation proceedings. Nevertheless, since we have determined that the notice requirement of Section 1310.3(C) was violated and that the inconclusive nature of the mediation report amounts to improper procedure for this default judgment, we need not base our nullification of the default judgment herein on this new issue created by Act 512, which neither party has addressed.

Conclusion
For the reasons stated herein, the Default Judgment in favor of Lesia Benton is hereby annulled. We remand to the lower court for further proceedings. Costs of *449 appeal are assessed to appellee, Lesia Benton.
JUDGMENT ANNULLED AND REMANDED.
NOTES
[1] A notice of postponement and resetting of the mediation conference dated June 26 also appears in the record. The notice states that the June 14 setting for mediation was reset for July 10. This appears to be in error since the conference was actually held on June 25. There is no record of a July 10 conference, and the OWC minutes fail to report when mediation conferences are conducted.
[2] Yvonne R. Rosen later signed the Mediation Case Report on behalf of an unidentified "adjuster/insurance company." Since the default judgment was against IP, we will focus on the pleadings and notices pertaining to IP.
[3] The briefs reveal a dispute regarding the actual date of service and/or waiver of citation and service. IP asserts that the waiver of citation was signed by Rosen and Marquis on June 5, while Benton claims that waiver of service did not occur until the June 25 mediation conference. However, neither party contests the fact that the waiver of citation forms were actually signed by Rosen and Marquis.