978 So.2d 1028 (2008)
LOUISIANA DEPARTMENT OF ENVIRONMENTAL QUALITY
v.
TANGILENA VILLAGE, INC.
No. 2007-CA-1230.
Court of Appeal of Louisiana, Fourth Circuit.
February 13, 2008.
Carolyn O. Bryant, Ted R. Broyles II, Louis Buatt, General Counsel, Louisiana Department of Environmental Quality, Office of the Secretary, Legal Affairs Division, Baton Rouge, LA, for Plaintiff/Appellant.
Roger A. Stetter, Roger A. Stetter, L.L.C., Whitney National Bank Building, New Orleans, LA, for Defendant/Appellee.
(Court composed of Judge DENNIS R. BAGNERIS SR., Judge EDWIN A. LOMBARD, Judge ROLAND L. BELSOME).
ROLAND L. BELSOME, Judge.
This matter was transferred to this Court from the First Circuit Court of Appeal. The Louisiana Department of Environmental Quality ("LDEQ") appeals the trial court's judgment, which nullified a prior judgment based on a finding of improper service. For the reasons that follow, we reverse and remand.
STATEMENT OF FACTS AND PROCEDURAL HISTORY
In March of 1999, LDEQ issued a Compliance Order, pursuant to the Louisiana Environmental Quality Act, La. R.S. 30:2001, et seq. ("the Act"), addressed to defendant, Tangilena Village, Inc. ("Tangelina") c/o Dr. J.H. McClendon ("Dr. McClendon"), the president of Tangelina. *1030 The Compliance Order alleged that Tangelina, the owner of a shopping center in Amite, Louisiana, was responsible for cleaning up contaminated soil discovered in 1993 during the closure of a service station located on the property.[1] Pursuant to the Compliance Order, Tangelina had thirty days to request a hearing; however, no request was made.
On February 13, 2001, LDEQ filed an ex parte petition requesting that the Compliance Order be made executory. The petition alleged that the Compliance Order was served on Tangelina on March 23, 1999, as evidenced by a copy of the certified mail return receipt, showing that on March 23, 1999, the Compliance Order was served on Tangelina c/o Dr. J.H. McClendon, and signed for by Charles Hickerson. The trial court granted the order in a judgment rendered on February 15, 2001.
On August 9, 2005, LDEQ filed a motion for contempt, alleging that Tangelina failed to comply with the terms of the Compliance Order and was therefore in contempt of the February 15, 2001 judgment making the Compliance Order executory. On August 18, 2005, Tangelina filed a cross motion to nullify the February 15, 2001 judgment based on the assertion that the Compliance Order was not properly served. After a lengthy continuance, LDEQ's motion for contempt and Tangelina's cross motion for nullity were brought before the trial court on June 26, 2006.
In support of Tangelina's cross motion, Dr. McClendon's affidavit was introduced, which stated that on March 23, 1999, the Compliance Order was apparently left in the hands of Charles Hickerson ("Mr. Hickerson"), who was not authorized to sign for registered mail addressed to Tangelina or Dr. McClendon. The affidavit further stated that Mr. Hickerson was an elderly gentleman who could not read or write. At the time, he worked at Dr. McClendon's optometry office a few days a week making coffee and running errands. Dr. McClendon also stated in his affidavit that Mr. Hickerson did not remember receiving the letter, nor could he explain what became of the letter. Dr. McClendon claimed he never saw the original letter.
At the time of the hearing, Dr. McClendon was in poor health and was unable to testify. Accordingly, trial court heard testimony from Dr. McClendon's daughter, who testified that she was familiar with her father's corporation and the information contained in his affidavit. She further testified she was familiar with Mr. Hickerson, explaining that he is an elderly gentleman who occasionally ran errands for her father, he was not paid a salary, he was not a regular employee, and he had no authority from Dr. McClendon to receive certified mail on behalf of Tangelina. Finally, she stated she knew that her father never received the certified mail containing the Compliance Order.
In opposition to Tangelina's cross motion, LDEQ argued that proper service of the Compliance Order was made on Tangelina on March 23, 1999. More specifically, LDEQ maintained that the Compliance Order was properly received at 109 E. Mulberry, Amite, Louisiana, which is the address filed by Tangelina with the Louisiana Secretary of State pursuant to La. R.S. 30:2050.23. The statute provides, in pertinent part:

*1031 A.(1) Notice to an applicant for a permit, a respondent, a petitioner for a declaratory ruling, or a party to an adjudicatory hearing shall be given by certified mail return receipt requested.
................
C.(2) Notice to a respondent prior to becoming a party may be given at the address of the respondent's agent for service of process, or an address filed by the respondent with the secretary of state or with the department.
La. R.S. 30:2050.23 (emphasis added).
Following the testimony of Dr. McClendon's daughter and the submission of Dr. McClendon's affidavit, the trial court ruled in favor of Tangelina. Judgment was signed on July 11, 2006, rendering the February 15, 2001 judgment null and void and remanding the matter to LDEQ for further proceedings. The trial court subsequently issued written reasons for judgment, stating in part:
. . . the March 19, 1999, correspondence between LDEQ and Tangelina Village is clearly addressed to Dr. J.H. McClendon, Registered Agent. The return receipt requested is evidently not signed by that "registered agent." Furthermore, Mr. Henderson has no legal authority to sign for certified mail on behalf of Tangelina Village.
Based on the totality of the circumstances in this case the notice does not sufficiently reach an equitable level of fair play and justice.
LDEQ's timely devolutive appeal followed.
STANDARD OF REVIEW
With respect to issues of law, the appellate court is required to determine whether the trial court's decisions are legally correct. Griggs v. Harrah's Casino, XXXX-XXXX, p. 17 (La.App. 4 Cir. 3/22/06), 929 So.2d 204, 214. Where a decision of a court is based on an erroneous application of law rather than a valid exercise of discretion, the trial court's decision is not entitled to deference from the reviewing court. Kem Search, Inc. v. Sheffield, 434 So.2d 1067, 1071-72 (La.1983).
DISCUSSION
On appeal, LDEQ asserts the trial court erred in finding that the Compliance Order was improperly served on Tangelina and in rendering the February 15, 1999 judgment null and void. LDEQ argues that it fully complied with La. R.S. 30:2050.23 by sending the Compliance Order by certified mail to Dr. McClendon, Tangelina's registered agent. Furthermore, LDEQ asserts that it submitted proof that the certified mail was signed for at that address by an individual working for Dr. McClendon.
LDEQ further argues that the trial court improperly relied on La. C.C.P. art. 2002, stating in her reasons for judgment that "a judgment shall be nullified if it is rendered . . . [a]gainst a defendant who has not been served with process as required by law." LDEQ suggests that although it is well settled that a party who is not notified of a hearing may bring an action to annul a judgment pursuant to Article 2002, in the instant case, the motion to make the Compliance Order executory was an ex parte proceeding. Therefore, LDEQ asserts that Tangelina was not deprived of an opportunity to be heard as contemplated by Article 2002.
We know of no case in our jurisprudence interpreting the notice requirements of La. R.S. 30:2050.23. Accordingly, we now address this issue res nova.
It is well established that a law shall be applied as written and no further interpretation made in search of the legislature's intent when the law is clear and unambiguous and its application does not lead to *1032 absurd consequences. La. C.C.P. art. 9. Discussing statutory interpretation, the Louisiana Supreme Court stated in Mallard Bay Drilling, Inc. v. Kennedy, XXXX-XXXX, pp. 16-17 (La.6/29/05), 914 So.2d 533, 546:
It is presumed that every word and provision in a statute was intended to serve some useful purpose, that some effect is to be given to each provision, and that no words or provisions were used unnecessarily. Conversely, it is not presumed that the legislature inserted idle, meaningless or superfluous language in a statute or that it intended any part of the statute to be meaningless, redundant or useless. The courts have a duty, if possible, to adopt a statutory construction that harmonizes and reconciles the statute with other provisions. Finally, courts should avoid a construction that creates an inconsistency when a reasonable interpretation can be adopted that does not do violence to the plain words of the statute and will carry out the legislature's intention.
In the present case, the statute's language is quite clear. It provides that notice, pursuant to the Act, "shall be given by certified mail return receipt requested" and "may be given at the address of the respondent's agent for service of process, or an address filed by the respondent with the secretary of state or with the department." La. R.S. 30:2050.23 A(1) and C(2).
Moreover, it is undisputed that the notice was sent to the proper address, and that it was signed for by Mr. Hickerson. It is also undisputed that Mr. Hickerson did part time work for Dr. McClendon at his office. Although Dr. McClendon claimed Mr. Hickerson had no authority to sign for him, that fact is not controlling. La. R.S. 30:2050.23 does not require that the notice be personally received by the registered agent.[2] Likewise, in actions brought pursuant to the Act, La. R.S. 30:2050.23 requires only that the notice be sent by certified mail to the registered agent's address. Therefore, we find that LDEQ established that it met the requirements of the statute in this case.
We thus conclude that Tangelina received proper notice of the Compliance Order under La. R.S. 30:2050.23. To uphold the trial court's ruling would effectively require LDEQ to proceed beyond the requirements of the Act. Accordingly, we find that the trial court erred in interpreting La. R.S. 30:2050.23 to require that the registered agent personally sign for the certified mail or that the person signing for the certified mail be an authorized agent for the registered agent.
CONCLUSION
Considering the law and evidence in the present case, we find the trial court erred in nullifying the February 15, 2001 judgment based on improper service. While we sympathize with Appellee's situation, we are bound by the language of the statute. Accordingly, the judgment granting Tangelina's motion for nullity is vacated, and the matter is remanded to the trial court for further proceedings.
REVERSED AND REMANDED.
NOTES
[1] Specifically, the LDEQ alleged that during removal of three underground storage tanks on the property owned by Tangelina, gasoline was discovered to have contaminated the surrounding soil. The LDEQ further asserted that Tangelina failed to properly remediate the contamination of the site and likewise failed to determine the extent and location of the soil that was contaminated by the release, thus leaving the soil contaminated.
[2] In contrast, it is worth noting that La. C.C.P. art. 1261, regarding service of a citation on a corporation, specifically requires personal service on the registered agent.