434 So.2d 1067 (1983)
KEM SEARCH, INC.
v.
David A. SHEFFIELD.
No. 82-C-2103.
Supreme Court of Louisiana.
June 27, 1983.
*1068 Christopher J. Roy, Alexandria, for applicant.
Michael R. Connelly, Rogers & Connelly, Baton Rouge, for respondent.
DENNIS, Justice.
This is a proceeding to annul a default judgment in the amount of $56,021.35, plus attorney's fees of $3,000, obtained by Kem-Search against David Sheffield in a suit on an open account.
In the previous action, Kem-Search sued on an open account to collect for petroleum products allegedly sold to David Sheffield, an attorney who also does business as J-L Petroleum Services. After confirmation by Kem Search of a preliminary default judgment against Sheffield in the amount of $56,021.35, plus attorney's fees in the sum of $3,000.00, Sheffield brought this action to annul the judgment. After taking evidence, the trial court found "no real evidence of fraud or ill practices" on the part of Kem Search, determined that Sheffield had been "grossly negligent" and rejected his demand for annulment. The court of appeal, in an opinion devoted principally to the question of whether Sheffield had been personally served in the open account suit, agreed that Sheffield had failed to prove fraud or ill practice and affirmed. 416 So.2d 220. We granted certiorari.
The record in these proceedings reflects that the preliminary default judgment was entered and confirmed under the following circumstances. Sheffield received notice of the open account suit when he received a copy of the petition, which was served at his Alexandria law office on March 18, 1980.[1] The same day or within a few days *1069 after his receipt of notification of the lawsuit, Sheffield telephoned Kem Search's attorney in Baton Rouge, informed him that he had several defenses to the lawsuit and would like to discuss a compromise before any action was taken on the suit. The attorney for Kem Search testified that he did not recall this phone conversation, but admitted that it may have occurred. In his brief in this court, however, he conceded that the conversation took place. On March 28, 1980, Sheffield sent the attorney the following letter:
This letter will confirm our recent telephone conversation wherein you would afford me additional time in which to obtain the services of an attorney and to file responsive pleadings.
Mr. Walter Krousel, attorney of Baton Rouge, will probably be representing me in this matter. However, before proceeding with contested litigation, I would like an opportunity to review this matter with you with the view in mind of working out some amicable settlement.
I expect to be in Baton Rouge within the next week or so, and would like to contact you a few days before my intended arrival in order that I can set up a meeting at your convenience.
If this is agreeable, please advise.
If you feel we should file responsive pleadings, I'll be only to [sic] happy to take such action as you desire.
The Kem Search attorney testified that on April 17, he responded by a letter which, in part, said:
I suspect that in this instance my client will accept very little short of a complete payoff of the debt. If you wish to discuss this matter feel free to give me a call. In the interim I would like to have an answer filed in the record so we can proceed as rapidly as possible should our discussions fail to be productive. I believe my client has been very patient in this matter and I hope we can work things out to everyone's satisfaction.
Thus, in his reply letter, the Kem Search attorney did not dispute the earlier telephone conversation with Sheffield, displayed a willingness to discuss a settlement, and expressed a preference but not a demand that an answer be filed to facilitate litigation "should our discussions fail to be productive." Sheffield testified that in May he called the Kem Search attorney, advised him of his offset defenses, and asked him to confer with his client about them. If Kem Search would not honor or consider his offsets, Sheffield said he told the attorney, he would go ahead and file his pleadings. According to Sheffield, the attorney said he would discuss the matter with Kem Search officials and let him know. The Kem Search attorney testified that this telephone conversation did not take place.
On May 22, 1980, without informing Sheffield, Kem Search's attorney entered a preliminary default. After entry of the preliminary default but before confirmation, Kem Search's attorney telephoned Walter Krousel, the Baton Rouge lawyer mentioned in Sheffield's letter, to see if he intended to represent Sheffield in the case. Krousel responded that Sheffield had not yet contacted him concerning the matter. Kem Search's attorney later testified that, at this point, he felt that "my obligation to [Sheffield] had been fulfilled and my obligation now was to my client." He proceeded to have the preliminary default confirmed on June 12, 1980, without informing either Krousel or Sheffield of his intentions. Sheffield wrote to Kem Search's attorney on July 2 and again on August 4 to propose a meeting to discuss Sheffield's defenses and offsets to the debt, but he received no reply. Sheffield only learned that a default judgment had been entered and confirmed when he received a notice on August 11, 1980, that his property was being seized and sold to satisfy the judgment.
Sheffield presented evidence of potentially valid defenses and substantial offsets to Kem Search's open account claim. The defenses included an erroneous billing by Kem Search to Sheffield's company for $4,948.44 in petroleum products that were sold prior to the existence of Sheffield's company. *1070 The offsets to which Sheffield testified were an $18,000 debt owed by Kem Search for barge services that was mistakenly billed to and paid by Sheffield, and a credit for $6,100 that Sheffield paid to satisfy Kem Search's rent obligation under an office lease. Kem Search did not controvert the evidence presented by Sheffield as to his defenses and offsets.
The record from the default judgment indicates that Sheffield also had a defense to the award of $3,000 in attorney's fees. When a creditor proves that his open account debtor failed to pay the debt within 30 days after receipt of a written demand therefor correctly setting forth the amount owed and a copy of the supporting invoices, the trial court shall award reasonable attorney's fees for the prosecution and collection of the debt. La.R.S. 9:2781. The trial court is given discretion in setting this award, but excessive attorney's fees are prohibited by disciplinary rules of this court. Leenerts Farms, Inc. v. Rogers, 421 So.2d 216 (La.1982); Saucier v. Hayes Dairy Products, Inc., 373 So.2d 102 (La.1979); Husk v. Blancand, 155 La. 816, 99 So. 610 (1924). Kem Search did not present any evidence to prove that Sheffield had received the written demand required by La. R.S. 9:2781 as a prerequisite for attorney's fees, and the record in the uncomplicated open account suit which resulted in the default judgment indicates that the $3,000 fee is clearly excessive. Accordingly, it appears that Sheffield easily could have defeated this claim had he not been denied the opportunity to assert a defense.
According to article 2004 of the Code of Civil Procedure, any final judgment obtained by fraud or ill practices may be annulled. Our jurisprudence sets forth two criteria to determine whether a judgment has been obtained by actionable fraud or ill practices: (1) when the circumstances under which the judgment was rendered show the deprivation of legal rights of the litigant who seeks relief, and (2) when the enforcement of the judgment would be unconscionable and inequitable. Smith v. Cajun Insulation, Inc. 392 So.2d 398 (La.1980). Johnson v. Jones-Journet, 320 So.2d 533 (La.1975). Furthermore, although our courts do not sanction negligence or laches, they have not hesitated to afford relief against such judgments regardless of any issue of inattention or neglect. C.C.P. art. 2004, Official Comment (b); Alonso v. Bowers, 222 La. 1093, 64 So.2d 443 (1953); Succession of Gilmore, 157 La. 130, 102 So. 94 (1924); City of New Orleans v. LeBourgeois, 50 La.Ann. 591, 23 So. 542 (1898); Comment, The Action of Nullity Under Louisiana Code of Civil Procedure Article 2004, 38 La.L.Rev. 806 (1978). Thus, the article is not limited to cases of actual fraud or intentional wrongdoing, but is sufficiently broad to encompass all situations wherein a judgment is rendered through some improper practice or procedure which operates, even innocently, to deprive the party cast in judgment of some legal right, and where the enforcement of the judgment would be unconscionable and inequitable. Chauvin v. Nelkin Ins. Agency, Inc. 345 So.2d 132 (La.App. 1st Cir.1977), writ denied, 347 So.2d 256 (La.1977); Schoen v. Burns, 321 So.2d 908 (La.App. 1st Cir.1975); St. Mary v. St. Mary, 175 So.2d 893 (La. App. 3d Cir.1965); Tapp v. Guaranty Finance Co., 158 So.2d 228 (La.App. 1st Cir. 1963), writ denied, 245 La. 640, 160 So.2d 228 (1964).
Conduct which prevents an opposing party from having an opportunity to appear or to assert a defense constitutes a deprivation of his legal rights. Thus, when a party fails to defend a suit because of the failure of the opposing party to warn him that a default would be taken, this judgment may be annulled when the parties had an agreement to give notice of any action taken on the suit, or the defaulted party relied on facts which he reasonably believed created such an agreement, and the enforcement of the judgment would be unconscionable and inequitable. Estelle Wilson Mortuary, Inc. v. Waker, 244 So.2d 630 (La. App. 4th Cir.1971); Engeran v. Consolidated Companies, Inc., 147 So. 743 (La.App. 1st Cir.1933); Hutton v. Fisher, 359 F.2d 913 (C.A.3rd 1966); Orange Theatre Corp. v. Rayherstz Amusement Corp., 130 F.2d 185 (C.A.3rd 1952); Moran v. Mitchell, 354 *1071 F.Supp. 86 (D.C.Va.1973); Selznick v. New York, 331 N.Y.S.2d 725 (1972).
Applying the foregoing precepts to the facts of this case, we conclude that Sheffield was unfairly deprived of an opportunity to present his defenses and thereby lost legal rights because of a judgment whose enforcement would be unconscionable and inequitable. The miscommunication between Sheffield and Kem Search's attorney operated to deprive Sheffield of an opportunity to defend against the attorney fee award, for which Kem Search presented no proof, and to urge other potentially valid defenses of which Sheffield made a prima facie showing. Furthermore, although Sheffield could have more prudently protected his rights by filing responsive pleadings to the petition, we conclude that the enforcement of the default judgment is nevertheless unconscionable, because Sheffield failed to act due to his mistaken and not unreasonable impression that Kem Search's attorney would give him an opportunity to file pleadings if his settlement overtures were rejected. Sheffield's belief was fully supported by the local court custom, acknowledged by the trial court, that an attorney should not confirm a default judgment without prior notice to the opposing attorney. The communications between Sheffield and the Kem Search attorney provide a basis for a reasonable belief that Sheffield, an attorney, would be given such notice. The single statement by Kem Search's attorney that he would like to have an answer in the record in case settlement negotiations were unproductive was not sufficient to dispel Sheffield's reasonable belief of such an agreement. The expression was in the form of a suggestion, rather than a demand or even a request, and it was not conditioned by a deadline or a warning that default would be taken without notice. The communications and all of the attorney's subsequent actions were consistent with Sheffield's understanding that he had been given a respite pending Kem Search's evaluation of Sheffield's offset claims and possible future negotiations. The attorney's communication with Krousel before confirmation of the default judgment indicates that he would not have confirmed the default without allowing Krousel time to file an answer had Krousel been employed as opposing counsel. It also indicates that, under the circumstances, the Kem Search attorney recognized such a notice was required either by local custom or his understanding with Sheffield, or both. Consequently, even though the Kem Search attorney may have acted innocently, his actions misled his adversary and unfairly deprived him of legal rights under a judgment whose enforcement would be unconscionable and inequitable.
The trial court is permitted discretion in deciding when a judgment should be annulled because of fraud or ill practice. Miller v. Miller, 156 La. 46, 100 So. 45 (1924); In re Koonce, 380 So.2d 140 (La.App. 1st Cir.1979), writ denied 383 So.2d 23 (La. 1980); Succession of Van Skye, 364 So.2d 1361 (La.App. 3rd Cir.1978). However, the ambit of a trial judge's discretion is determined by the reasons for its existence. State v. Talbot, 408 So.2d 861, 885 (La.1981) (on rehearing). As Judge Friendly noted in Noonan v. Cunard Steamship Co., 375 F.2d 69, 71 (C.A.2d 1967), several of the most important reasons for deferring to the trial judge's exercise of discretion are: his observation of the witness, his superior opportunity to get "the feel of the case," see Cone v. West Virginia Pulp & Paper Co., 330 U.S. 212, 216, 67 S.Ct. 752, 755, 91 L.Ed. 849 (1947), and the impracticability of framing a rule of decision where many disparate factors must be weighed, see Atchison, T. & S.F. Ry. v. Barrett, 246 F.2d 846 (C.A.9th 1957). On occasion, when a problem arises in a context so new and unsettled that the rule-makers do not yet know what factors should shape the result, the case may be a good one to leave to lower court discretion. See Rosenberg, Judicial Discretion of the Trial Court, Viewed from Above, 22 Syracuse L.Rev. 635, 662 (1971).
It is well settled that reviewing courts will defer to a trial judge's reasonable decision on a question or matter properly within his discretion. It is self-evident, however, that if the trial court's decision was based on its erroneous interpretation or *1072 application of law rather than a valid exercise of discretion, such an incorrect decision is not entitled to deference.
In the present case, the judge's opinion indicates that his ruling was based on his erroneous belief that an ill practice may consist only of actual fraud or intentional wrongdoing and that any negligence by the debtor prevents annulment of the judgment. Accordingly, we have independently reviewed the record, applying the correct legal precepts, and have determined that Sheffield was deprived of his legal rights and that enforcement of the judgment would be unconscionable and inequitable. Whether innocently or otherwise, the Kem Search attorney's confirmation of the default judgment without giving prior notice constitutes an ill practice under the circumstances of this case and entitles Sheffield to have the default judgment annulled.
For the reasons assigned, the judgments of the previous courts are reversed, and the default judgment based on the open account is annulled.
JUDGMENTS REVERSED AND ANNULLED.
WATSON, J., concurs and assigns reasons.
BLANCHE, J., concurs for reasons assigned by Watson, J.
DIXON, C.J., dissents.
WATSON, Justice, concurring.
The result reached by the majority is entirely correct. However, the case should have been decided on a different basis.
A review of the record reveals that the itemized statement of account and the affidavit filed in support of the suit on open account identifies the defendant as "J-L Petroleum Services, Inc." and makes no reference to David A. Sheffield doing business as J-L Petroleum Services. For a valid default judgment there must be proof of the demand sufficient to establish a prima facie case. LSA-C.C.P. art. 1702. No testimony or other evidence was presented on confirmation against Sheffield. There was no prima facie case that Sheffield was indebted to the plaintiff and the judgment was improperly rendered.
I respectfully concur.
NOTES
[1] Sheffield urges the nullity of the default judgment on the grounds that he was not legally served with process and never entered a general appearance in this suit. La.C.C.P. art. 2002(2). Sheffield's testimony of the failure of legal service of process is partly corroborated by the testimony of his secretaries and the affidavit of the serving officer. The official return of the serving officer, however, indicates that process was personally served on David Sheffield. The lower courts rejected Sheffield's argument, but we believe that the question is a very close one. Nevertheless, we set this question to one side because we conclude that the default judgment should be annulled on other grounds.