LABORDE, Judge.
Plaintiff-appellee, E.M. LeBlanc, Jr., confirmed a default judgment against defendants-appellants, Electronic Clinic, Inc., Financial Accounting and Computer Systems, Inc., Ron Sykes, John W. Mitchell, and E.M. LeBlanc, III. On appeal, defendants seek to annul the default judgment on the grounds that it was procured by fraud and ill practices. Defendants also appeal the trial court’s decision not allowing Ron Sykes to act as surety on the suspensive appeal bond. For reasons to follow, we annul the default judgment and reverse and remand the decision of the trial court.
Plaintiff filed suit in district court seeking damages against defendants concerning agreements regarding the furnishing and servicing of computer software. The controversy apparently arose between the parties in connection with the development of a computer software package designed to be used by accountants and CPAs. Shortly after filing suit and the service of citation upon the defendants, a meeting was scheduled for the purpose of resolving the controversy. Present at the meeting were all parties and their attorneys.
Subsequent to the meeting, counsel for the plaintiff wrote a letter to Carl Cleveland, counsel for all defendants except E.M. LeBlanc, III, dated May 20, 1980, stating:
“Dear Carl,
This will confirm my conversation with you at our meeting, here at Lafayette on May 14,1980, informing you that I would take no adverse action to your clients, Electronic Clinic, Inc., Financial Accounting and Computer Systems, Inc., John W. Mitchell, and Ron Sykes, pending our investigation of the possibility of an amicable settlement of this case. In the event that we are unable to reach an amicable settlement, then I would request you and Leslie Schiff, who represents E.M. LeBlanc, III, to file responsive pleadings.
You are aware that at our meeting of May 14, 1980,1 agreed with Warren Per-rin to release Casuser’s Group from the lawsuit with the understanding that E.M. LeBlanc, Jr.’s membership in Casuser’s Group will be honored and that he will receive the support and enhancements for the CAS and FAS and the program to reconvert client data from FAS to CAS, which Mr. Mitchell said he could write in three hours.
I am writing a letter to Leslie Schiff requesting that as soon as he has had an opportunity to investigate this matter and review the information with his client, E.M. LeBlanc, III, I would appreciate him contacting me in order that we can arrange a meeting between the three of us.
I have also requested my client, E.M. LeBlanc, Jr., to work up for me an accounting of the monies received and spent by him with proper identification and vouchers so that we can see if we can work out an amicable settlement of this suit. If we are unable to reach an amicable settlement, then I will request you and Leslie Schiff to file responsive pleadings for your clients.”
Thereafter, counsel for the plaintiff had no contact with counsel for defendants for a period of four years. As noted in the *631 letter, E.M. LeBlanc, III was represented by Leslie Schiff, not Carl Cleveland. On June 27, 1983, plaintiff filed a motion for entry of preliminary default against Financial Accounting and Computer Systems, Inc., E.M. LeBlanc, III, John W. Mitchell and Ron Sykes, and on July 18, 1984, filed a motion for entry of preliminary default against Electronic Clinic, Inc. By judgment dated July 26, 1984, the preliminary defaults were confirmed and judgment was rendered in favor of E.M. LeBlanc, Jr. and against the defendant, Electronic Clinic, Inc., in the sum of $32,378.91, together with legal interest thereon from January 1, 1980, until paid, together with attorneys’ fees of 25% of the aggregate of principal and interest. Judgment was further rendered in favor of E.M. LeBlanc, Jr. and against the defendants, Financial Accounting and Computer Systems, Inc., John W. Mitchell, and Ron Sykes, jointly and in soli-do, in the full sum of $13,000.00, together with legal interest at the rate of 14 and ½% per annum from March 9, 1979, until paid, together with 25% on both principal and interest as attorneys’ fees. Judgment was additionally rendered in favor of E.M. Le-Blanc, Jr. and against Ron Sykes and John W. Mitchell, jointly and in solido, in the full sum of $17,845.52, together with legal interest thereon from June 18, 1979, until paid, with attorneys’ fees of 25% on the aggregate of principal and interest and all costs of the proceedings. On December 3, 1984, defendants-appellants filed a petition for nullity of judgment, which petition was supplemented and amended on March 20, 1985, Plaintiff answered the petition and the matter proceeded to trial on November 20, 1985. By judgment dated January 24, 1986, appellants’ petition for nullity of judgment was denied and, after denial of appellants’ motion for new trial on February 6,1986, appellants timely perfected this appeal.
On appeal, defendants assert two assignments of error: (1) the trial court erred in refusing to nullify the default judgment rendered on July 26, 1984, as it was unquestionably obtained by fraud or ill practices and enforcement of the judgment against appellants would be unconscionable and inequitable; and (2) the trial court erred in concluding that Ron Sykes, one of the appellants, was ineligible to act as surety on the suspensive appeal bond.
In the first assignment, appellants argue that the default judgment was obtained by fraud and ill practices. La.C.C.P. art. 2004 provides that any such judgment obtained by such means may be annulled. The requirements for annulling a judgment under this article are set forth in Kent Search, Inc. v. Sheffield, 434 So.2d 1067, 1070 (La. 1983):
“Our jurisprudence sets forth two criteria to determine whether a judgment has been obtained by actionable fraud or ill practices: (1) when the circumstances under which the judgment was rendered show the deprivation of legal rights of the litigant who seeks relief, and (2) when the enforcement of the judgment would be unconscionable and inequitable. ... [T]he article is not limited to cases of actual fraud or intentional wrongdoing, but is sufficiently broad to encompass all situations wherein a judgment is rendered through some improper practice or procedure which operates, even innocently, to deprive the party cast in judgment of some legal right, and where the enforcement of the judgment would be unconscionable and inequitable.” (citations omitted)
Appellee argues that appellants’ interpretation and reliance on the letter (quoted above) sent to Carl Cleveland is misplaced. Appellee does not contest the existence of the letter, nor does he contend that Carl Cleveland was not personally involved in negotiations among the parties after the letter was written. What the appellee does argue is that a separate case entitled Acadiana Travel Services, Inc. v. Eddie M. LeBlanc, III and E.M. LeBlanc & Associates, an allegedly collateral matter, provided notice to Carl Cleveland because members of his law firm were personally involved. In reviewing the record, we find that the Acadiana suit failed to reasonably give notice to Carl Cleveland that an amicable settlement could not be reached. As noted previously, E.M. LeBlanc III was represented by *632 Mr. Schiff, not Mr. Cleveland. Counsel for appellee candidly admits that at no time prior to confirmation of the default judgment did he contact counsel for the appellants and advise him that an amicable settlement could not be reached and that responsive pleadings should be filed. Counsel for appellee testified that the May 20th letter written to Carl Cleveland was misfiled and that he was unaware of its existence until it was brought to his attention after the default judgment was confirmed. Appellee also argues that appellants mistakenly construed the May 20, 1980, letter as an unequivocal grant of an unlimited extension of time. Appellee avers that the language in the letter does not state that counsel would be renotified if an amicable settlement could not be reached. It simply sets forth a request to file responsive pleadings when prospects of settlement were unobtainable. After reviewing the record and the letter, we cannot understand how contradictory interpretations can be elicited from the letter. The language of the letter cited by the appellee reads as follows: “If we are unable to reach an amicable settlement, then I will request you and Leslie Schiff to file responsive pleadings for your clients.” The clear import of the letter was established by counsel for the appellee who testified that it is customary in this area that opposing counsel be notified that a default judgment is being taken. Counsel for the appellee goes on to state that if he had been aware of the May 20th letter, that he would have “asked him [Carl Cleveland] to file responsive pleadings and told him within a certain amount of time, I am going to take a default if you do not file any responsive pleadings.” What counsel for appellee is in effect saying is that if he would not have misfiled the letter, he would have contacted Carl Cleveland. Counsel for appellee feels that since he was unaware of the letter, and that Carl Cleveland should have known that settlement negotiations had broken off, that he was justified in taking a default judgment. We strongly disagree with the appellee.
In Kem Search, 434 So.2d at 1070, the Louisiana Supreme Court discussed how an agreement between opposing parties would affect a default judgment in stating:
“Conduct which prevents an opposing party from having an opportunity to appear or to assert a defense constitutes a deprivation of his legal rights. Thus, when a party fails to defend a suit because of the failure of the opposing party to warn him that a default would be taken, this judgment may be annulled when the parties had an agreement to give notice of any action taken on the suit, or the defaulted party relied on facts which he reasonably believed created such an agreement, and the enforcement of the judgment would be unconscionable and inequitable.” (citations omitted)
Applying the above precepts to the facts of this case, we conclude that the appellants were denied the opportunity to present their defenses thereby losing legal rights. The enforcement of this judgment would be unconscionable and inequitable.
In the second assignment of error, appellants argue that Ron Sykes, one of the defendants, should have been allowed to file as a surety for the suspensive appeal bond. Because we find that the default judgment should be annulled, it is unnecessary to decide this issue.
For the above and foregoing reasons, the judgment of the trial court is reversed, and the default judgment is annulled. This case is remanded to the trial court to allow defendants fifteen days to file responsive pleadings. The appellee is cast with all costs of this appeal.
JUDGMENT ANNULLED AND REMANDED.