STEWART, J.
[tThe plaintiff, Yellowbird Investments, LLC (‘Yellowbird”), filed a petition to annul a default judgment rendered in favor of Michael Barber (“Barber”), the defendant herein, for damages caused when a rotten tree fell from neighboring property onto Barber’s property. The trial court rendered judgment dismissing Yellow-bird’s annulment action and ordering it to pay costs and attorney fees. Yellowbird now appeals, and Barber answers the appeal. Finding no error, we affirm but award additional attorney fees for the appeal.
FACTS
On March 8, 2010, Barber confirmed a default judgment against Yellowbird for property damages in the amount of $36,250 sustained when a rotten tree located at 3141 Edson in Shreveport fell onto his property located at 3145 Edson. Yellow-bird got notice of the default judgment on March 10, 2010. Months later, Yellowbird learned that Barber had caused the seizure of four pieces of property and that a sheriffs sale was scheduled for early September 2010.
On August 16, 2010, Yellowbird filed a petition to annul the default judgment under La. C.C.P. art. 2004 and to enjoin the sheriffs sale of the seized property. Yel-lowbird asserted that Barber obtained the default judgment by fraud or ill practices and that its enforcement would be inequitable and unjust. Yellowbird’s petition related that Barber had claimed that Yellow-bird, a co-tax sale owner of 3141 Edson, was renting the property to a tenant and was liable for the damages caused by the rotten tree. RHowever, Yellowbird asserted that Barber’s allegations in his petition for damages and testimony at the confirmation hearing were false.
Yellowbird’s petition states that it acquired only an 18% undivided interest in 3141 Edson at a tax sale on June 2, 2006, that it never had custody or control over the property, that it never leased it to a tenant, and that it had no knowledge of the condition of the rotten tree.
In his answer, Barber alleged that Yel-lowbird and its owner Randall Lee Har-ville (“Harville”), acting through Yellow-bird and other business entities in which he is a shareholder or member, routinely buy tax sale properties to lease.
The parties passed on the preliminary injunction hearing and proceeded to a trial *973 of the annulment action on September 10, 2010. Though admitting that the service return from the original suit showed personal service on Yellowbird through its agent, Dianne Harville (“Dianne”), Yellow-bird sought to introduce testimony from both Harvilles to prove that Dianne was not served as indicated by the return. Both Harvilles were prepared to testify about their practice upon being served with a lawsuit to show that lack of service could have been the only explanation for Yellowbird’s failure to respond. Barber objected that such testimony would be an improper expansion of the pleadings. The trial court sustained Barber’s objection and denied Yellowbird’s request for time to amend its pleadings.
Testifying on behalf of Yellowbird, Har-ville explained that Yellowbird is a real estate investment company that bought an 18% tax sale ^interest in 3141 Edson in 2005. Its interest was redeemed in July 2009, after the damage to Barber’s property had occurred. Harville denied that Yel-lowbird ever took possession of the property. He testified that Yellowbird did not rent out 3141 Edson, did not inspect it, and did not insure it. He denied that Yellow-bird was even involved in the rental business. He explained that he and his wife Dianne rent out properties through another real estate investment business, Cody Investments, which has a 47% ownership interest in 3141 Edson from a tax sale in 2003. He further explained that their rental properties are managed by Delhi Properties. However, he denied that Delhi Properties ever managed 3141 Edson on behalf of Yellowbird.
On cross, Harville admitted to having ownership interests in numerous business entities that buy properties at tax sales and “in some cases” taking possession of such properties and renting them out.
After Barber’s brief testimony, which is not of relevance in this appeal, the trial court ruled in favor of Barber and denied Yellowbird’s annulment petition. The trial court found that Yellowbird failed to prove that the default judgment was obtained by any fraud or ill practice. It concluded that Yellowbird presented a factual dispute which does not suffice to annul a default judgment. The trial court noted that this was not a situation where there was a rush to get a default judgment. According to the trial court, Barber did exactly what the law allowed him to do and “didn’t even do it quickly.” Finally, the trial court noted that Yellowbird had two opportunities to respond to the suit, namely, when it was served and when it |4got notice of the default judgment. However, it did nothing to contest the judgment until Barber seized properties to satisfy the judgment.
Judgment dismissing Yellowbird’s claims and awarding Barber attorney fees in the amount of $1,500.00 was signed on October 25, 2010. On October 28, 2010, Yellowbird filed a motion for a new trial. After hearing arguments, the trial court denied Yellowbird’s motion and Barber’s request for additional attorney fees. Yel-lowbird’s appeal followed. Barber has answered the appeal to request additional attorney fees.
DISCUSSION

Yellowbird’s Appeal

In its first assignment of error, Yellow-bird asserts that the trial court erred in not annulling the default judgment, which was based on false testimony and misleading evidence. Yellowbird asserts that it would be inequitable and unconscionable to enforce the default judgment when it had an 18% tax sale interest in 3141 Edson, had never exercised possession over the property, had no knowledge of the condition of the tree, and was not aware that a *974 suit had been filed against it. According to Yellowbird, the presentation of the tax sale deed as proof of its ownership of 3141 Edson was false and misleading evidence that does not establish its custody and control over the property. Yellowbird points out that its interest in 3141 Edson was redeemed.
La. C.C.P. art. 2004(A) states, “A final judgment obtained by fraud or ill practices may be annulled.” The two criteria for determining whether a judgment has been obtained by fraud or ill practice include: (1) whether |athe circumstances under which the judgment was rendered show that the litigant seeking relief was deprived of legal rights, and (2) whether the enforcement of the judgment would be unconscionable or inequitable. Belle Pass Terminal, Inc.v. Jolin, Inc., 2001-0149 (La.10/16/01), 800 So.2d 762; Kem Search, Inc. v. Sheffield, 434 So.2d 1067 (La.1983); Payne v. Glass, 41,232 (La.App.2d Cir.8/23/06), 939 So.2d 526.
La. C.C.P. art. 2004 is not limited to cases of actual fraud or intentional wrongdoing. Rather, it encompasses situations in which a judgment is rendered through some improper practice or procedure which operates, even innocently, to deprive the party cast in judgment of some legal right. Kem Search, supra; Lieber v. Caddo Levee Distr. Bd. of Com’rs, 32,551 (La.App.2d Cir.12/8/99), 748 So.2d 587, writ denied, 2000-0561 (La.4/7/00), 759 So.2d 763, cert. denied, 531 U.S. 928, 121 S.Ct. 306, 148 L.Ed.2d 246 (2000). As stated by the supreme court, “Conduct which prevents an opposing party from having an opportunity to appear or to assert a defense constitutes a deprivation of his legal rights.” Kem Search, supra at 1070.
However, a nullity action is neither a substitute for an appeal from default judgment nor a solution to legal rights lost through a party’s negligence or failure to act. Payne v. Glass, supra, citing State, Dept. of Social Services, Office of Family Support in the Interest of Glass v. Robinson, 31,025 (La.App.2d Cir.9/23/98), 718 So.2d 609, writ not considered, 1998-2704 (La.12/18/98), 731 So.2d 277. It is neitherj^unconscionable nor inequitable to enforce a default judgment where the party seeking annulment had a valid defense but failed to timely assert it. An otherwise valid default judgment cannot be set aside merely to provide an opportunity for the party seeking annulment to offer a defense solely because the default judgment is erroneous and such action would be in furtherance of justice. Payne, supra; Robinson, supra.
A nullity action under La. C.C.P. art. 2004 is not a substitute for an appeal from a judgment that may be based on insufficient evidence or a misinterpretation of substantive law. Rather, the action provided by La. C.C.P. art. 2004 is “designed to afford relief against a judgment procured by methods viewed with disdain by the judiciary.” Lieber, supra at 590, citing Smith v. Cajun Insulation, Inc., 392 So.2d 398 (La.1980).
A trial court has wide discretion in determining whether a judgment should be annulled because of fraud or ill practice. Kem Search, supra; Burkett v. Property of Douglas, 575 So.2d 888 (La.App. 2d Cir.1991).
We are not persuaded by Yellow-bird’s argument that Barber presented false and misleading evidence to obtain the default judgment and thereby committed an ill practice requiring annulment of the judgment. Review of the confirmation hearing transcript shows that Barber presented the facts as he knew them. He testified that the owner of 3141 Edson *975 abandoned the property in about 2004 when he was incarcerated. Barber had not seen him since that time. He also testified that Yellowbird purchased a tax sale deed to the property. When the trial court asked Barber how he knew who was renting the property, Barber explained that he spoke 17to the person living at the house when the tree fell and learned that he was renting from “Delhi Properties for Yellowbird.” The trial court questioned whether Yellowbird “owned” the property when the tree fell but ultimately accepted the tax sale deed as sufficient evidence on this issue. The transcript shows that the trial court was aware that more than one tax sale purchaser had interests in 3141 Edson and that Yellowbird had purchased a partial interest only. Barber also testified that the tree had been rotten for a number of years and that he had spoken to the original owner about it when he first purchased 3145 Edson in 1997. Barber provided evidence of his damages and evidence indicating that the rotten condition of the tree had been apparent.
To recover damages caused by a defective thing, the plaintiff must prove that the defendant had custody of the thing, that the thing had a defect which presented an unreasonable risk of harm, that the defective condition caused the damage, and that the defendant knew or should have known of the defect. La. C.C. art. 2317; Ladner v. Trinity Group, Ltd., 45,937 (La.App.2d Cir.2/16/11), 57 So.3d 1197, writ denied, 2011-0580 (La.4/29/11), 62 So.3d 115. The evidence presented at the confirmation appears to state a prima facie case of fault under La. C.C. art. 2317. Even so, the failure to present sufficient proof is not an issue for a nullity action; rather, a failure of proof must be raised in a motion for a new trial or an appeal. National Income Realty Trust v. Paddie, 98-2063 (La.7/2/99), 737 So.2d 1270,[1] citing Maraist and Lemmon, 1 Louisiana Civil Law Treatise, [ 8Civil Procedure, § 12.6 (1999). Even a court’s erroneous consideration of the law cannot be construed as an ill practice. Lieber, supra.
Yellowbird’s argument regarding the presentation of false and misleading evidence is unavailing. It is clear that Yel-lowbird’s true complaint concerns the sufficiency of the evidence upon which the default judgment was based and its failure to defend against Barber’s claims. We find no ill practice by Barber in obtaining the default judgment.
Yellowbird’s second assignment of error is that the trial court committed legal error when it refused to grant it leave to amend its petition to include the allegation that it had not been served in the original action. Yellowbird cites Chromaceutical Advanced Technologies, Inc. v. Lundy & Davis, L.L.P., 2008-653 (La.App. 3d Cir.2/4/09), 4 So.3d 227, writ denied, 2009-0428 (La.5/22/09), 9 So.3d 146, in support of its argument. Granting an exception of no cause of action, the trial court dismissed Chromaceutical’s petition to annul a default judgment. The trial court found that the petition failed to state grounds for annulment but merely alleged defenses that could have been asserted at the original trial on the merits. It denied Chroma-ceutical leave to amend its petition. Because Chromaceutical suggested at oral argument and in its brief that it could allege other grounds for annulment relating to lack of service or notice, the third circuit concluded that the trial court erred in denying leave to amend as required by La. C.C.P. art. 934.[2]
*976 lflHere, La. C.C.P. art. 934, which directs that the court “shall order” amendment of the petition, is not at issue. Yellowbird is not alleging lack of service as a separate ground for annulment based on a vice of form under La. C.C.P. art. 2002(A)(2).[3] Instead, it is raising the issue in conjunction with its claim that Barber obtained the default judgment through some ill practice. Yellowbird asserts that the alleged lack of service, rather than its own inattention or neglect, is what prevented it from answering Barber’s suit and asserting its defenses to his claims.
In Payne v. Glass, supra, this court stated:
The absence of a valid and sufficient reason for a party’s failure to defend a suit in which a default judgment has been taken, when defenses could and should have been pleaded, precludes that party from later maintaining an action for nullity of the judgment for fraud or ill practices based on those defenses. [Citations omitted.]
The party seeking annulment must show that it was some fraud or ill practice by the other party that prevented it from asserting any defenses he may have had. Payne, supra; Robinson, supra.
Conduct which prevents a party from having an opportunity to appear or to assert a defense constitutes a deprivation of legal rights. Kem Search, supra. But this conduct is generally attributable to the opposing party, as the court explained:
Thus, when a party fails to defend a suit because of the failure of the opposing party to warn him that a default would be taken, this judgment may be annulled when the parties had an agreement to give notice of any action taken on the suit, or the defaulted party relied on facts which he reasonably believed created such an | ^agreement, and the enforcement of the judgment would be unconscionable and inequitable. [Citations omitted.]
Id., at 1070-1071.
Yellowbird acknowledges that Barber would have had no knowledge of whether service was properly executed. There are no facts showing that Barber did anything to prevent Yellowbird from answering the suit and asserting its defenses. Barber merely relied on the sheriffs return showing that Yellowbird had been served through its agent and proceeded in a “slow and deliberate” manner, as described by the trial court, to obtain the default judgment.
Even if the trial court erred in denying Yellowbird’s request for leave to amend its petition, we find that Yellow-bird’s amendment to allege lack of service would not strengthen its cause for annulment under La. C.C.P. art. 2004. Though the record does not include the sheriffs return, it does show that the parties agree that the sheriffs return indicates that personal service was made on Yellowbird’s agent. By relying on the sheriffs return in the prosecution of his suit against Yel-lowbird, Barber did not deprive Yellowbird of legal rights and did not commit any ill practice that requires annulment of the default judgment.
*977 For these reasons, we find that the trial court did not abuse its discretion in dismissing Yellowbird’s annulment action. Barber’s Anstver
In his answer to the appeal, Barber seeks an increase in the award of attorney fees from $1,500 to $6,107.50, plus an additional amount for appeal. Barber’s counsel filed in the trial court an affidavit of attorney fees ^showing B4.9 hours of work. He asserts that because Yellowbird claimed the tax sale deed did not give it authority to possess or control the property, he researched R. Lee Harville’s connections with many businesses involved in buying and renting out abandoned properties. He also researched court records and discovered numerous lawsuits involving Harville and his companies. Counsel asserts that he had several witnesses ready to testify at trial but that Harville admitted to buying properties at tax sales and renting them out.
La. C.C.P. art. 2004(C) states, “The court may award reasonable attorney fees incurred by the prevailing party in an action to annul a judgment on these grounds.” We recognized that the trial court has much discretion in awarding attorney fees. Custom-Bilt Cabinet & Supply, Inc. v. Quality Built Cabinets, Inc., 32,441 (La.App.2d Cir. 12/8/99), 748 So.2d 594; Allen v. Burnett, 530 So.2d 1294 (La.App. 2d Cir.1988).
Upon reviewing this record, we cannot say that the trial court abused its discretion awarding $1,500 in attorney fees for this matter. Research pertaining to other companies owned by Harville and suits involving those companies was not germane to the ultimate issues in this matter, namely, whether the default judgment was obtained through some fraud or ill practice by Barber and, specifically, whether the evidence offered by Barber concerning Yellowbird’s connection with 3141 Edson was false or misleading. However, we do find that an additional award of attorney fees in the amount of $1,000 is appropriate for appellate work.
I ^CONCLUSION
For the reasons explained in this opinion, we affirm the judgment of the trial court and award $1,000 in additional attorney fees for this appeal. Costs are assessed to the plaintiffiappellant, Yellow-bird Investments, LLC.
AFFIRMED.

. This case involved a party seeking annulment of a default judgment under La. C.C.P. art. 2002(A)(2), not La. C.C.P. art. 2004 as in the case sub judice.

. La. C.C.P. art. 934 states, in relevant part,
*976 "When the grounds of the objection pleaded by the peremptory exception may be removed by amendment of the petition, the judgment sustaining the exception shall order such amendment within the delay allowed by the court.”

. Pursuant to La. C.C.P. art. 2002(A)(2), a final judgment shall be annulled if it is rendered against a defendant who has not been served with process and who has not waived objection to jurisdiction, or against whom a valid default judgment has not been taken.