Judgment rendered February 26, 2025.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 56,113-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

KARL PENTECOST                                    Plaintiff-Appellant

versus

JOSEPH W. GRASSI,                                 Defendants-Appellees
McKEITHEN, RYLAND, &
CHAMPAGNE

* * * * *

Appealed from the
Fourth Judicial District Court for the
Parish of Ouachita, Louisiana
Trial Court No. 2019-2913

Honorable Jefferson B. Joyce, Judge

* * * * *

KARL PENTECOST                                    In Proper Person

GIBSON LAW PARTNERS, LLC                          Counsel for Appellees,
By: James H. Gibson                               Joseph W. Grassi;
    Marc D. Moroux                                McKeithen, Ryland &
                                                  Champagne; and The
                                                  Law Firm of Louis V.
                                                  Champagne, APC

* * * * *

Before STEPHENS, THOMPSON, and ROBINSON, JJ.

**STEPHENS, J.**,

This civil appeal arises from the Fourth Judicial District Court, Parish of Ouachita, the Honorable Jefferson B. Joyce, Judge, presiding. The plaintiff, Karl Pentecost, appeals from the trial court's judgment granting exceptions of *res judicata* and no cause of action filed by the defendants, Joseph W. Grassi and the law firm of McKeithen, Ryland, and Champagne. For the reasons set forth below, we affirm.

## FACTS AND PROCEDURAL HISTORY

Karl Pentecost ("Mr. Pentecost") was the sole proprietor of Ouachita Truck and Trailer, a truck repair company. Mr. Pentecost d/b/a Ouachita Truck and Trailer was joined in a lawsuit originally instituted by the Louisiana Safety Association of Timbermen ("LSAT") against another company owned by Mr. Pentecost, Will Transport L.L.C., for alleged unpaid workers' compensation insurance premiums. *See*, *Louisiana Safety Ass'n of Timbermen-Self Insurers Fund v. Will Transp., L.L.C.*, 51,798 (La. App. 2 Cir. 2/28/18), 245 So. 3d 1194, *writs denied sub nom. Louisiana Safety Ass'n of Timbermen- Self Insurers Fund v. Will Transp., L.L.C.*, 18-0734, 18-0731 (La. 9/14/18), 252 So. 3d 480, 485. Joseph Grassi ("Mr. Grassi") of McKeithen, Ryland, & Champagne ("the law firm") represented Mr. Pentecost and both of his companies.

At the bench trial, Mr. Grassi moved for an involuntary dismissal and prevailed; therefore, he did not present a defense. Although the trial court found that Will Transport was the only party responsible for payment of the premiums to LSAT, this Court reversed the dismissal of Mr. Pentecost's companies and rendered judgment that both of his companies were solidarily liable with a third company for the unpaid insurance premiums. This Court

did not remand the case for Mr. Pentecost and his companies to present their case. Although Mr. Pentecost requested a rehearing, this Court denied his request. Similarly, the Louisiana Supreme Court denied Mr. Pentecost's writ application. *See*, *Louisiana Safety Ass'n of Timbermen-Self Insurers Fund, supra.*

On September 13, 2019, Mr. Pentecost, a self-represented litigant at the time, filed a petition against Mr. Grassi and his law firm alleging that they committed legal malpractice in their representation of him and his companies in the LSAT case. More specifically, Mr. Pentecost listed in his petition the following:

1. Mr. Grassi failed to object to evidence that was not a part of the contracts or agreements related to the insurance coverage.

2. Mr. Grassi failed to request cross examination of certain documents.

3. Mr. Grassi did not cross-examine Mr. Pentecost to establish that he had no employees which relieved Mr. Pentecost of workers compensation requirements.

4. Mr. Grassi failed to advise, offer, or file for Mr. Pentecost relief under La. C.C.P. art. 2002-2004.

Mr. Pentecost argued that he suffered damages in excess of $748,930.44 plus attorney fees, and he requested $500,000.00 in general damages. On September 15, 2021, after retaining counsel, Mr. Pentecost filed an amended petition alleging the following:

- Defendants failed to file an answer to the appeal filed by LSAT, the plaintiff in the Louisiana Second Circuit Court of Appeal proceeding, pursuant to La. C.C.P. Art. 2133 to allege, alternatively and only in the event that the Court of Appeal reversed the grant of involuntary dismissal, that the case should be remanded so that Mr. Pentecost and KP Trucking could present a defense on the merits.

- Mr. Grassi failed to timely file Mr. Pentecost's brief in the Second Circuit Court of Appeal proceeding, failed to appear for oral argument, failed to contact opposing counsel to ask for

2

their brief, nor did he file a motion to reinstate oral argument with the Second Circuit Court of Appeal. Foreseeably, the Second Circuit Court of Appeal reversed the district court's dismissal of the claims against Plaintiff (Karl Pentecost, d/b/a OT&T) and K.P. Trucking as co-defendants.

Following the amendment to the petition as well as answers filed by the defendants, Mr. Grassi and his firm filed an exception of peremption on December 9, 2021. In the exception, the defendants alleged that Mr. Pentecost had one year from the date of discovery of the actions giving rise to the claim to file the malpractice suit. According to the defendants, Mr. Pentecost knew of the alleged malpractice action in the LSAT case as early as the trial in October 2016 but failed to file his petition until September 29, 2019.

On January 13, 2022, the trial court held a hearing on the exception of peremption and issued its ruling granting the exception in open court on February 23, 2022. According to this Court's opinion, the trial court determined that by April 2018, Mr. Pentecost knew or should have known that matters were adverse to him. *See*, *Pentecost v. Grassi*, 54,836 (La. App. 2 Cir. 3/1/23), 357 So. 3d 588, *writ denied*, 23-00476 (La. 5/23/23), 360 So. 3d 1258. The trial court detailed that this time frame was reasonable because Mr. Pentecost alleged malpractice acts in this petition that not only involved the trial held in October 2016, but also acts that occurred during the appeal process for the LSAT case. Once this Court denied Mr. Pentecost's rehearing request, the trial court determined that Mr. Pentecost knew or should have known that matters were adverse to him. Consequently, his September 2019 petition was not filed within the one-year period set forth in La. R.S. 9:5605(A). The trial court ultimately dismissed Mr. Pentecost's suit and all the claims against the defendants.

Mr. Pentecost appealed the decision of the trial court, but this Court agreed with the trial court that Mr. Pentecost should have had knowledge of any alleged malpractice by Mr. Grassi in February 2018 during the LSAT case when this Court reversed the judgment of the trial court and denied rehearing in April 2018. Similarly, Mr. Pentecost attempted to argue for the first time on appeal that Mr. Grassi committed a fraudulent act of malpractice and a post-malpractice fraudulent concealment of the act. Because this claim was not asserted before the trial court, this Court did not address that claim. Ultimately, this Court affirmed the trial court's judgment granting the exception of peremption, and the Louisiana Supreme Court denied Mr. Pentecost's writ application on May 23, 2023. *See*, *Pentecost v. Grassi*, *supra*.

On July 17, 2023, Mr. Pentecost, as a self-represented litigant, filed a "Petition to Nullification of Final Judgment" pursuant to La. C.C.P. art. 2004 requesting that the court annul the judgment on the exception of peremption for fraud and ill practices. In this petition, Mr. Pentecost again named as defendants Mr. Grassi and McKeithen, Ryland, & Champagne. He alleged that Mr. Grassi committed fraud and ill practices when he concealed the fact that he failed to appear at oral arguments on the LSAT appeal. Mr. Pentecost also asserted that Mr. Grassi did not obtain Mr. Pentecost's informed consent before requesting an involuntary dismissal at the trial court level in the LSAT case. On August 25, 2023, the defendants filed exceptions of *res judicata* and no cause of action. Mr. Pentecost filed an amended petition on January 3, 2024, and the defendants filed exceptions of *res judicata* and no cause of action in response to the amendment on January 22, 2024.

4

On February 7, 2024, the trial court held a hearing on these exceptions. Concerning the *res judicata* exception, the defendants argued that no new arguments were raised in Mr. Pentecost's new petition. Although Mr. Pentecost attempted to raise the fraud issues on appeal in the previous lawsuit, this Court, according to the defendants, ruled that Mr. Pentecost could not raise the fraud claims on appeal for the first time and found that the fraud claims should have been raised prior to the appeal. The defendants alleged that all five factors of *res judicata* were met as everything, including the parties, facts, and circumstances, was the same as in the previous malpractice lawsuit which ended in a final judgment.

In response, Mr. Pentecost argued that if not for fraud or concealment, he would have asserted his arguments in the first malpractice lawsuit. The court questioned Mr. Pentecost about when he learned of the fraud, and Mr. Pentecost explained that he discovered it when he was researching for his appeal in the previous malpractice matter. Mr. Pentecost stated that Mr. Grassi failed to appear in court, did not advise him that he failed to appear in court, and continued to hide his lack of appearance from Mr. Pentecost during the LSAT litigation. Mr. Pentecost reiterated throughout his arguments that fraud had not been and was still not an adjudicated issue.

With regard to the exception of no cause of action, the defendants argued that the conduct related to the ill practices claim occurred prior to the final judgment in the previous malpractice suit. In order for a cause of action for an annulment to occur, the alleged conduct relating to the fraud and ill practice had to occur after the judgment in the previous malpractice matter. Because the conduct occurred prior to the final judgment in the malpractice action, the defendants maintained that an action for nullity of the

judgment was not possible. Mr. Pentecost responded and urged that discovery, not the act, is important in determining whether a previous judgment may be annulled. The trial court ultimately granted the exceptions of *res judicata* and no cause of action, finding that all requirements were met for both exceptions. Mr. Pentecost now appeals the trial court's ruling on these exceptions.

## DISCUSSION

On appeal, Mr. Pentecost first asserts that the trial court committed legal and manifest error in not finding a cause or causes of action within the four corners and on the facts of the nullity petition. In his second assignment of error, Mr. Pentecost maintains that the trial court committed legal or manifest error in granting the exception of *res judicata*. Although Mr. Pentecost's brief is not compliant with the URCA, this Court reads *pro se* filings indulgently and will attempt to discern the thrust of the plaintiff's position on appeal and the relief he seeks. *Linn v. Ouachita Parish Police Jury*, 55,480 (La. App. 2 Cir. 4/10/24), 383 So. 3d 1171; *Fobbs v. CompuCom Sys., Inc.*, 55,173 (La. App. 2 Cir. 9/27/23), 371 So. 3d 1146; *Magee v. Williams*, 50,726 (La. App. 2 Cir. 6/22/16), 197 So. 3d 265.

In support of his assignments of error, Mr. Pentecost argues that he only became aware of Mr. Grassi's conduct **during the LSAT appeal** when Mr. Grassi was questioned about his actions during a deposition taken on November 20, 2020. These actions included failing to file an answer to the appeal, timely file a brief for the appeal, and appear for oral arguments. Because Mr. Grassi delayed in revealing his actions related to the LSAT appeal, Mr. Pentecost suggests that this delay prevented him from filing his

6

original malpractice petition timely and supports this Court nullifying the judgment in the first malpractice suit.

In response, the defendants claim that La. C.C.P. art. 2004 is not intended as a substitute for an appeal or second chance but rather is intended to prevent injustice that cannot be corrected through a new trial or appeal. Mr. Pentecost, according to the defendants, has made no allegation that his right to defend himself was denied as Mr. Pentecost was present during the hearing on the exception of peremption that extinguished the first malpractice claim. For these reasons, the defendants suggest that the exceptions of *res judicata* and no cause of action should be affirmed.

The nullity of a final judgment may be demanded for vices of either form or substance. La. C.C.P. art. 2001. A final judgment obtained by fraud or ill practices may be annulled. La. C.C.P. art. 2004(A). An action to annul a judgment on these grounds must be brought within one year of the discovery by the plaintiff in the nullity action of the fraud or ill practices. La. C.C.P. art. 2004(B). The burden of proof is on the party seeking the nullity to establish that the action was brought within one year of the discovery of fraud or ill practices. *Cariere v. The Kroger Store*, 52,846 (La. App. 2 Cir. 8/14/19), 276 So. 3d 1150, *writ denied*, 19-01471 (La. 11/12/19), 282 So. 3d 224; *Burkett v. Prop. of Douglas*, 575 So. 2d 888 (La. App. 2 Cir. 1991). The one-year limitation of La. C.C.P. art. 2004(B) is considered a period of peremption rather than prescription. *Id.*

The two criteria for determining whether a judgment has been obtained by fraud or ill practice include: (1) whether the circumstances under which the judgment was rendered show that the litigant seeking relief was deprived of legal rights, and (2) whether the enforcement of the

7

judgment would be unconscionable or inequitable. *Belle Pass Terminal, Inc. v. Jolin, Inc.*, 01-0149 (La. 10/16/01), 800 So. 2d 762; *Kem Search, Inc. v. Sheffield*, 434 So. 2d 1067 (La. 1983); *Payne v. Glass*, 41,232 (La. App. 2 Cir. 8/23/06), 939 So. 2d 526; *Yellowbird Investments, L.L.C. v. Barber*, 46,977 (La. App. 2 Cir. 3/14/12), 87 So. 3d 970. La. C.C.P. art. 2004 is not limited to cases of actual fraud or intentional wrongdoing. Rather, it encompasses situations in which a judgment is rendered through some improper practice or procedure which operates, even innocently, to deprive the party cast in judgment of some legal right. *Kem Search, supra; Yellowbird Investments, L.L.C., supra*; *Lieber v. Caddo Levee Distr. Bd. of Com'rs*, 32,551 (La. App. 2 Cir. 12/8/99), 748 So. 2d 587, *writ denied*, 00-0561 (La. 4/7/00), 759 So. 2d 763, *cert. denied*, 531 U.S. 928, 121 S. Ct. 306, 148 L. Ed. 2d 246 (2000). As stated by the supreme court, "Conduct which prevents an opposing party from having an opportunity to appear or to assert a defense constitutes a deprivation of his legal rights." *Yellowbird Investments, supra*; *Kem Search, supra*.

A nullity action under La. C.C.P. art. 2004 is not a substitute for an appeal from a judgment that may be based on insufficient evidence or a misinterpretation of substantive law. Rather, the action provided by La. C.C.P. art. 2004 is "designed to afford relief against a judgment procured by methods viewed with disdain by the judiciary." *Lieber, supra* at 590, *citing Smith v. Cajun Insulation, Inc.*, 392 So. 2d 398 (La. 1980).

The law on *res judicata* is set forth in La. R.S. 13:4231 as follows:

> Except as otherwise provided by law, a valid and final judgment is conclusive between the same parties, except on appeal or other direct review, to the following extent:

8

(1) If the judgment is in favor of the plaintiff, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and merged in the judgment.

(2) If the judgment is in favor of the defendant, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and the judgment bars a subsequent action on those causes of action.

(3) A judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them, with respect to any issue actually litigated and determined if its determination was essential to that judgment.

Under the *res judicata* statute, a second action is precluded when the following are satisfied: (1) the judgment is valid; (2) the judgment is final; (3) the parties are the same; (4) the cause or causes of action asserted in the second suit existed at the time of the final judgment in the first suit; and (5) the cause or causes of action in the second suit arose out of the same transaction or occurrence that was the subject matter of the first litigation. *Chauvin v. Exxon Mobil Corp.*, 14-0808 (La. 12/9/14), 158 So. 3d 761; *Barnett v. Louisiana Med. Mut. Ins. Co.*, 51,908 (La. App. 2 Cir. 5/23/18), 248 So. 3d 594, *writ denied*, 18-0944 (La. 9/28/18), 253 So. 3d 154; *Alpine Meadows, L.C. v. Winkler*, 49,490 (La. App. 2 Cir. 12/10/14),154 So. 3d 747, *writ denied*, 15-0292 (La. 4/24/15), 169 So. 3d 357; *Bankers Ins. Co. v. State*, 53,140 (La. App. 2 Cir. 11/20/19), 285 So. 3d 59.

The purpose of the doctrine of *res judicata* is to promote judicial efficiency and the final resolution of disputes. *Rogers v. Caddo Par. Sch. Bd.*, 54,239 (La. App. 2 Cir. 7/13/22), 342 So. 3d 1151; *Ave. Plaza, LLC v. Falgoust*, 96-0173 (La. 7/2/96), 676 So. 2d 1077; *Hines v. Smith*, 44,285 (La. App. 2 Cir. 8/12/09), 16 So. 3d 1234, *writ denied*, 09-2001 (La.

9

12/11/09), 23 So. 3d 922. *Res judicata* forecloses both the relitigation of matters that have not been litigated but should have been raised in the earlier suit (claim preclusion) and matters previously litigated and decided (issue preclusion). *Alpine Meadows, L.C.*, *supra*; *Hudson v. City of Bossier*, 33,620 (La. App. 2 Cir. 8/25/00), 766 So. 2d 738, *writ denied*, 00-2687 (La. 11/27/00), 775 So. 2d 450.

The doctrine of *res judicata* is *stricti juris*, and any doubt concerning application of the principle of *res judicata* must be resolved against its application. *Rogers*, *supra*; *Kelty v. Brumfield*, 93-1142 (La. 2/25/94), 633 So. 2d 1210; *Hines*, *supra*. The party who urges the exception of *res judicata* bears the burden of proving its essential elements by a preponderance of the evidence. If there is any doubt as to its applicability, the exception must be overruled. *Rogers*, *supra*; *Hines*, *supra*.

The standard of review of a ruling on an exception of *res judicata* is manifest error when the exception is raised before the case is submitted and evidence is received from both sides. *Rogers*, *supra*; *Barnett v. Louisiana Med. Mutual Ins. Co.*, 51,908 (La. App. 2 Cir. 5/23/18), 248 So. 3d 594, *writ denied*, 18-0944 (La. 9/28/18), 253 So. 3d 154. The *res judicata* effect of a prior judgment is a question of law that is reviewed *de novo* on appeal. *Rogers*, *supra*; *Penton v. Castellano*, 49,843 (La. App. 2 Cir. 6/24/15), 169 So. 3d 739.

The peremptory exception of no cause of action tests the legal sufficiency of the plaintiff's petition by determining whether the law affords a remedy on the facts alleged in the petition. *Scheffler v. Adams and Reese, LLP*, 06-1774 (La. 2/22/07), 950 So. 2d 641; *Gipson v. Fortune*, 45,021 (La. App. 2 Cir. 1/27/10), 30 So. 3d 1076, *writ denied*, 10-0432 (La. 4/30/10), 34

So. 3d 298; *Blanche v. Varner*, 52,659 (La. App. 2 Cir. 5/22/19), 273 So. 3d 620. A "cause of action," when used in the context of the peremptory exception of no cause of action, refers to the operative facts that give rise to the plaintiff's right to judicially assert the action against the defendant. *White v. St. Elizabeth B.C. Bd. of Directors*, 45,213 (La. App. 2 Cir. 6/2/10), 37 So. 3d 1139; *Blanche*, *supra*. The purpose of the exception of no cause of action is not to determine whether the plaintiff will prevail at trial, but is to ascertain if a cause of action exists. *Bogues v. Louisiana Energy Consultants, Inc.*, 46,434 (La. App. 2 Cir. 8/10/11), 71 So. 3d 1128; *Blanche*, *supra*. The exception is triable on the face of the petition, and for the purpose of determining the issues raised by the exception, the well-pleaded facts in the petition must be accepted as true. *Fink v. Bryant*, 01-0987 (La. 11/28/01), 801 So. 2d 346; *Blanche*, *supra*.

An appellate court's review of a trial court's ruling sustaining an exception of no cause of action is *de novo* because the exception raises a question of law, and the trial court's decision is based only on the sufficiency of the petition. *Fink*, *supra*; *Blanche*, *supra*. The essential question is whether, in the light most favorable to plaintiff and with every doubt resolved in plaintiff's favor, the petition states any valid cause of action for relief. *Wright v. Louisiana Power & Light*, 06-1181 (La. 3/9/07), 951 So. 2d 1058; *Scheffler*, *supra*; *Blanche*, *supra*.

In 2015, the Louisiana Supreme Court determined that an attorney's post-malpractice actions consisting of fraudulent concealment can amount to fraud and thus bar application of three-year peremptive period for legal malpractice. *Lomont v. Bennett*, 14-2483 (La. 6/30/15), 172 So. 3d 620. The defendant in *Lomont* failed to record a community property agreement

in the mortgage and conveyance records for the plaintiff. *Lomont*, 14-2483, p. 2, 172 So. 3d at 623-24. Two years later in 2010, the defendant filed the agreement after the plaintiff notified the defendant that she was unable to refinance her mortgage on the property. *Id.* Following the discovery of a lien on the property in December 2010, the defendant alleged that she reported the malpractice to the plaintiff but the defendant continued representing the plaintiff to attempt to remedy the lien. *Id.* It was not until March 2012 that the defendant revealed to the plaintiff that the defendant had a conflict of interest and could no longer represent the plaintiff in an effort to remove the lien. *Id.* After meeting with another attorney on June 8, 2012, the plaintiff filed a malpractice action on July 12, 2012, in which she claimed the defendant committed legal malpractice by failing to record the community property settlement. The plaintiff later supplemented and amended her petition alleging that the defendant acted fraudulently in mispresenting and/or suppressing the truth regarding the malpractice the defendant committed. *Id.*, 14-2483, pp. 3-5, 172 So. 3d at 624-25. The defendant filed an exception of peremption which the trial court granted and the Fifth Circuit Court of Appeal affirmed. *Id.*, 14-2483, pp. 5-6, 172 So. 3d at 625-26.

Ultimately in *Lomont*, the Louisiana Supreme Court reversed the decisions of the lower courts, finding that the facts and circumstances constituted fraud. Given this finding of fraud committed within the meaning of La. R.S. 9:5605(E), the Louisiana Supreme Court determined that a legal malpractice claim is governed by the one-year prescriptive period set forth in La. C.C. art. 3492, versus the peremptive periods set forth in La. R.S. 9:5605(A). *Id.*, 14-2483, pp. 22-24, 172 So. 3d at 636-37. The Supreme

Court reasoned that since the defendant "effectively hid her malpractice," the one-year prescriptive period began to run on June 28, 2012, making the plaintiff's suit timely as it was filed on July 12, 2012. *Id.*, 14-2483, pp. 24-27, 172 So. 3d at 637-39.

At first glance, Mr. Pentecost's circumstances are comparable to the plaintiff's circumstances in *Lomont*. Mr. Pentecost alleged that Mr. Grassi concealed the actions he took relating to the LSAT appeal and failed to reveal these actions until a malpractice suit would be considered perempted. However, a significant distinction must be highlighted. Whereas the plaintiff in *Lomont* amended her petition to include transactions or occurrences related to fraudulently mispresenting and/or suppressing the truth, Mr. Pentecost failed to amend his petition and assert his claims related to Mr. Grassi concealing his actions related to the LSAT appeal. Instead, he classified Mr. Grassi's behavior relating to the appellate work as malpractice and failed to articulate in the petition Mr. Grassi's concealment of fact that Mr. Grassi failed to file an answer to the appeal, failed to timely file a brief, and failed to appear for the oral argument.

The Code of Civil Procedure requires that a petition "shall contain a short, clear, and concise statement of *all* causes of action arising out of, and of the material facts of, the transaction or occurrence that is the subject matter of the litigation." La. C.C.P. art. 891. The 1990 comment to this article further clarifies that the plaintiff is required to set forth the facts of the transaction or occurrence and not merely the facts supporting the cause of action asserted because "all causes of action arising out of that transaction or occurrence are considered to have been submitted for adjudication and will be *barred* or merged in the judgment."

13

By failing to include the fraud allegations when he amended his malpractice petition, Mr. Pentecost is precluded from alleging the fraud claims in his nullity petition. *See Alpine Meadows*, *supra*. Although Mr. Pentecost attempts to nullify the final judgment in the first malpractice suit by filing a "nullity petition," *res judicata* bars him from using the fraud/concealment claims to justify the annulment petition. La. C.C.P. art. 891 further supports this as the article requires a plaintiff to assert all causes of action arising out of the transaction or occurrence that is the subject matter of the litigation. Mr. Pentecost's cause of action in his nullity petition arose out of the same transaction or occurrence that was the subject matter of the first malpractice suit. Similarly, the other requirements for *res judicata* are met in this matter. Mr. Pentecost's first malpractice suit resulted in a valid, final judgment, and the parties in the first malpractice lawsuit and this lawsuit are the same: Mr. Pentecost, Mr. Grassi, and the law firm. Lastly, Mr. Pentecost's cause of action alleged in the nullity action existed at the time of the first malpractice suit. For these reasons, the record supports the trial court's ruling granting the defendants' exception of *res judicata*.

Consequently, because *res judicata* is applicable to the claims made in Mr. Pentecost's nullity petition, his petition does not allege facts that are legally sufficient for the law to afford him a remedy. According to the record, Mr. Pentecost is unable to prove a set of facts supporting a claim which would entitle him to relief. Therefore, the trial court properly granted the defendants' exception of no cause of action. Considering the trial court properly granted both the exception of *res judicata* and exception of no cause of action, we affirm the trial court's dismissal of Mr. Pentecost's claims.

**CONCLUSION**

Given the reasons stated above, the trial court's judgment granting the defendants' exceptions of *res judicata* and no cause of action is affirmed. The costs of this appeal are assessed to the plaintiff, Karl Pentecost.

**AFFIRMED.**