GARRETT, J.
|]The defendants, James and Sarah Keefer, appeal from a trial court order denying their “Motion to Dismiss and Order to Stop Garnishment.” For the following reasons, we affirm the trial court ruling.
FACTS
This case arose from a lease dispute between the plaintiff, J. Granger Harriss, IV, and the defendants, Archives Grill, LLC (“Grill”), James and Sarah Keefer, and Patrick D. Bell. The Grill executed a lease with Harriss for restaurant space in the Mid-City Plaza building (“MCP”) in Shreveport. Harriss is the majority owner of MCP. The lease was to run from June 3, 2010, through November 30, 2012. The rent was $3,000 per month, with a six-month abatement. It contained an acceleration clause in the event of a default. The Grill was to pay the gas and electricity bills. The Keefers operated the restaurant. They both signed a lease guaranty agreement for all the obligations under the lease on June 3, 2010.
In February 2011, Mr. Keefer accepted a job with the Department of Defense (“DOD”) that required him to move to Georgia. The Keefers talked with Harriss about getting out of the lease and having Bell take over. On April 30, 2011, Bell also signed a guaranty on the existing lease. The Keefers executed a promissory note for the payment of past-due rent. Although it appears that the parties discussed a possible agreement releasing the Keefers from their obligation under the guaranty, no final agreement was ever reached or signed. The Keefers left Shreveport and moved out of state. Bell did not pay the obligations under the lease. In May 2011, Harriss discovered that substantially all of the property had been removed from the space without giving notice of intent to vacate.
|2On May 23, 2011, Harriss filed the instant suit against the Grill, the Keefers, and Bell, claiming they defaulted on the lease.[1] Harriss sought to collect past-due *1205 rent of $10,999.96, and accelerated rent through the end of the term of $54,000. He also claimed that a $540.95 electric bill was due. Pursuant to the guaranty agreements, Harriss sought judgments against the Keefers and Bell.
The Grill failed to answer after being served with process through the Louisiana Secretary of State. With regard to the Keefers, Harriss proceeded against them pursuant to the provisions of the Louisiana long-arm statute, La. R.S. 13:3201 et seq.[2] On July 7, 2011, Harriss filed into the record the |srequired affidavits of mailing of service of process to each of the Keefers through the long-arm statute. The citations and petitions were mailed to the Keefers at an address in Byron, Georgia. Harriss attested that the process was sent by United States certified mail, in envelopes properly addressed to the Keefers, with sufficient postage attached. The exhibits attached to the affidavits show that both certified mail notices were left at the Byron, Georgia, address on June 3, 2011. The envelopes were returned “unclaimed” on June 18,2011.
The Grill and the Keefers did not file an answer, and preliminary defaults were entered on August 15, 2011. A confirmation hearing was held in open court on August 22, 2011, before Judge Leon Emanuel. Harriss filed an affidavit in support of confirmation of default, detailing service of process on the Grill and his attempts to serve the Keefers at their address in Georgia. He noted the affidavits of mailing of long-arm service of process previously filed in the record. The lease, the lease guaranty, and itemization of court costs were included as an exhibit to the affidavit. Harriss obtained a default judgment against the Grill and the Keefers on that date, for $65,901.65, costs of $360.74, and legal interest.[3] Pursuant to La. C.C.P. art. 1913, the clerk of court mailed notices of the default judgment to the Keefers at the address in Byron, Georgia, on that same date.
After the appeal delays ran, Harriss filed a petition to garnish Mr. Keefer’s wages on October 6, 2011. On October 10, 2011, an order was Lsigned making the judgment executory and the clerk of court *1206 was ordered to issue a writ of fieri facias. The DOD/Defense Finance and Accounting Service was made garnishee and ordered to answer interrogatories. On November 8, 2011, the DOD filed answers to the interrogatories. At some point, the DOD began sending the wage garnishment payments to the Caddo Parish Sheriffs Office (“CPSO”), pursuant to the court orders.
The Keefers eventually secured the services of an attorney. On April 13, 2012, they filed a pleading in the existing suit record captioned as a “Motion for Rule to Show Cause, for New Trial, and to Stay or Set Aside the Judgment and Garnishment.” They alleged that they never received service of process, and that the judgment against them was based on fraud or ill practices, misrepresentations to the court, and other unspecified acts or omissions. They alleged that the service was returned, not through any action on their part, but because it was not mailed to the current address they claimed to have furnished to Harriss.
The Keefers also alleged they had an agreement with Harriss releasing them from any further obligation under the lease and detailed their version of what they thought had transpired. They asserted that Harriss had a dispute with Bell, and wrongfully sued them for breach of contract. They asked for a new trial, to set aside the garnishment, and to stay the garnishment, pending a hearing on their motions. The trial court did not sign the portion of the ex parte order they submitted to stop the garnishment. A' rule to show cause on the motion was set for a hearing on June 11, 2012. A hearing was not held on that date. It appears that the Keefers did not obtain service upon Har-riss. The matter lay dormant for' several years. The DOD continued to remit the wage garnishment payments to CPSO.
|fiOn January 9, 2015, the Keefers’ attorney filed another pleading captioned “Amended Petition,” reiterating all of their prior claims and asserting cross-claims against Harriss and Bell for damages caused by the garnishment. According to the Keefers, Harriss and Bell had an agreement whereby Bell was substituted as guarantor on the lease and was made the member-manager of the Grill, releasing the Keefers from all obligations. The Keefers claimed that Harriss and Bell breached an agreement to indemnify and hold them harmless in the substitution of Bell on the lease. They asserted that the garnishment was obtained by fraud and ill practices and on insufficient grounds. They demanded a concursus proceeding to determine the ownership of the garnishment funds being held by the CPSO. They again requested a new trial and an injunction to stop the garnishment. Due to the retirement of Judge Emanuel, the .case was assigned to Judge Michael Pitman. A hearing was set by the court for February 23, 2015, but was not held. It appears that the Keefers were unable to serve Harriss.
The Keefers had a dispute with their attorney, dismissed him, and chose to represent themselves. On May 2, 2016, they filed a pleading entitled “Motion to Dismiss and Order to Stop Garnishment,” in which they asked that the court grant their “motion for summary judgment” pursuant to the “Federal Rules of Civil Procedure.” They again sought .dismissal of the default judgment and the garnishment based on their claim that they did not get service of the suit. They did not raise any complaints regarding the substance of the default judgment in their pleading. However, they attached numerous exhibits to their filing, outlining some negotiations for the substitution of Bell on the lease. They did not supply any documentation or proof that a final agreement was ever reached or signed by the parties. Some | flof the emails attached to the pleading actually indicate that the negotiations had broken down. *1207 The ex parte order submitted to the court, along with the inartful pleadings, were somewhat unintelligible. The order purported to grant relief without a court hearing and was not signed by the court. Instead, the court generated its own order which appropriately set the matter for a hearing.
The trial court held a hearing on the Keefers’ motions on June 13, 2016. The Keefers traveled to Shreveport and were present in court along with Harriss. Prior to the hearing, Harris filed a legal memorandum in opposition to the motions. The Keefers and Harass argued their positions, but the parties were not sworn to testify.
The Keefers argued that they were never served with process and that they had an agreement with Harriss to be relieved of the lease obligation. They claimed they did not receive a copy of the default judgment and only became aware of the judgment when Mr. Keefer’s wages were garnished.[4] They outlined all of their attempts to attack the default judgment through the efforts of their attorney and claimed that he did not perform satisfactorily in representing their interests. Curiously, they submitted an affidavit from Bell which denied that the Keefers were released from any agreement they had with Harriss or that Bell agreed to meet the Keefers’ obligations.[5]
17Harriss pointed out that a motion to dismiss and a motion for summary judgment were not proper procedural devices considering the posture of this case. He argued that a motion for new trial would be an appropriate method to attack the default judgment. However, since the Keefers failed to file that motion within seven days of the mailing of the notice of the default judgment, as required by law, it was untimely. Harriss also maintained that he complied with all the requirements for entry of a valid default judgment and for service of process under the long-arm statute. He noted that the certified letters came back “unclaimed.” He argued this did not mean the notices did not reach the recipients. Rather, it meant that the notices for the certified mail were left at the address and the Keefers did not go pick up the certified mail from the post office. Harriss pointed to jurisprudence holding that the parties cannot defeat service under the long-arm statute by failing to claim the letters.[6] He introduced into evidence proof that he also utilized the services of a commercial courier to make delivery of the process to the Keefers at the Byron, Georgia, address, which is another method of service provided for under the long-arm statute. See La. R.S. 13:3204 and 3205. The package was returned on June 15, 2011, with a notation, “RECEIVER DID NOT ORDER, REFUSED.” Harriss also presented the testimony of the MCP property manager, Ms. Emery, who stated that there was no agreement to release the Keefers from their obligations under the lease.
|sThe trial court found that the Keefers’ reference to a motion for summary judgment was misplaced because that is a pretrial procedure, and they were seeking to overturn a default judgment. The trial *1208 court construed the Keefers’ most recent pleading as a motion for new trial and a motion to dismiss and stop the garnishment. The court noted that a motion for new trial must be filed within seven days of the judgment, and pointed out that the first motion for new trial was filed by the Keefers’ attorney in April 2012, some eight months after the default judgment, and the latest motion for new trial was filed by the Keefers, in proper person, in 2016, more than four years after the judgment. The motion for new trial was denied as untimely. The requests for a motion for summary judgment, and to dismiss and stop the garnishment were all denied. The trial court did not specifically address the merits of the Keefers’ claims attacking the default judgment.
On June 23, 2016, the trial court signed an order denying the Keefers’ motions and ordering that Harriss be allowed to pursue enforcement of the judgment without further impediment. The Keefers, representing themselves, appealed suspensively.[7] Essentially, they are contending that the trial court erred in denying them relief.
J^TIMELINESS OF APPEAL
Harriss filed a motion with this court to dismiss the appeal as untimely, arguing that the Keefers are appealing from the default judgment entered in August 2011. On October 13, 2016, a writ panel of this court referred the motion to the merits of the appeal.
The delay for seeking a suspensive appeal is set forth in La. C.C.P. art. 2123, which provides in pertinent part:
A. Except as otherwise provided by law, an appeal that suspends the effect or the execution of an appeal-able order or judgment may be taken, and the security therefor furnished, only within thirty days of any of the following:
(1) The expiration of the delay for applying for a new trial or judgment notwithstanding the verdict, as provided by Article 1974 and Article 1811, if no application has been filed timely.
La. C.C.P. art. 1974 provides the delay for applying for a new trial:
The delay for applying for a new trial shall be seven days, exclusive of legal holidays. The delay for applying for a new trial commences to run on the day after the clerk has mailed, or the sheriff has served, the notice of judgment as required by Article 1913.
La. C.C.P. art. 1913 states in part:
A. Except as otherwise provided by law, notice of the signing of a final judgment, including a partial final judgment under Article 1915, is required in all contested cases, and *1209 shall be mailed by the clerk of court to the counsel of record for each party, and to each party not represented by counsel.
[[Image here]]
C. Notice of the signing of a default judgment against a defendant on whom citation was served personally, and who filed no exceptions or answer, shall be mailed by the clerk of court to the defendant-at the address where personal service was obtained or to the last known address of the defendant.
D. The clerk shall file a certificate in the record showing the date on which, and the counsel and parties to whom, notice of the signing of the judgment was mailed.
| mService of process under the long-arm statute has the same legal force and validity as personal service on the defendant in this state. See La. R.S. 13: 3204(C).
It is clear that the Keefers are appealing from the trial court order of June 23, 2016. The Keefers filed their sus-pensive appeal a little more than two weeks after the order was signed. Their motion for suspensive appeal, filed on July 11, 2016, was timely.
The trial court termed the latest pleading filed by the Keefers as a motion for new trial and essentially considered it, along with their initial pleading, which was entitled a motion for new trial. Their second pleading also sought a new trial. All the pleadings attacked the default judgment for insufficient service of process and argued that no obligation was owed under the lease. The court stated that it denied the motion for new trial as untimely and denied the motion to dismiss and the request for an order to stop the garnishment. Normally, a judgment denying a motion for new trial is an interlocutory ruling and is not an appealable judgment. However, courts consider the appeal of a denial of a motion for new trial as an appeal of the judgment on the merits when it is clear that the intent was to appeal the merits of the case. See Harter v. Harter, 50,942 (La.App. 2 Cir. 11/10/16), 208 So.3d 971; 9029 Jefferson Highway, L.L.C. v. S & D Roofing, L.L.C., 15-686 (La.App. 5 Cir. 2/24/16), 187 So.3d 522.
Here, the trial court did not specifically address the merits of the claims made by the Keefers, finding only that they were not asserted timely. However, the trial court told the Keefers that they could appeal the decision. Because we find that the Keefers are appealing, not only from the trial court’s dismissal of their pleadings as an untimely motion for new trial, but _Jjjalso from - the trial court’s refusal to overturn the default judgment, we will consider the appeal.
TIMELINESS OF MOTION FOR NEW TRIAL
As stated above, La. C.C.P. art. 1974 provides that the delay for applying for a new trial shall be seven days, exclusive of legal holidays. The delay for applying for a new trial commences to run on the day after the clerk has mailed, or the sheriff has served, the notice of judgment, as required by La. C.C.P. art. 1913. The default judgment was entered on August 22, 2011, and the clerk of court mailed notice to the Keefers on that same date. The notice of judgment was not returned. On April 13, 2012, the Keefers’ attorney first filed a motion for new trial, seeking to attack the default judgment. The amended petition filed on January 9, 2015, also sought a new trial. The Keefers filed their own pleading on May 2, 2016, essentially asserting all of the same objections to the default judgment previously asserted. It is clear that none of the pleadings were filed within seven days of the mailing of notice *1210 of the default judgment. The .trial court was correct in reasoning that the pleadings before him constituted. a motion for new trial, which was untimely,, and in dismissing the Keefers’ claims on that basis.[8]
Even if the Keefers’ pleadings somehow could be construed as an action to annul the default judgment for vices of form under La. C.C.P. art. 2002 and vices of substance under La. C.C.P. art. 2004, they failed to |12present any evidence or proof of their claims.[9] In an action to annul a judgment based on the validity of service, the burden of proof lies on the claimant to show by a preponderance of the evidence that service was not properly made. State v. $1330,00 in U.S. Currency, 2015-623 (La.App. 3 Cir. 11/12/15), 180 So.3d 513. The party seeking annulment for fraud or ill practices, must show that it was some fraud or ill practice by the other party that prevented him from asserting any defenses that he may have had. Yellowbird Invs., L.L.C. v. Barber, 46,977 (La. App. 2 Cir. 3/14/12), 87 So.3d 970, writ not cons., 2012-0866 (La. 6/1/12), 90 So.3d 422. The record shows that the Keefers were not prevented from presenting any evidence or testimony at the June 2016 hearing. This record is abundantly clear that the trial court made every effort to ensure that the Keefers would have their day in court. When they had their day in court, they inexplicably presented no ^evidence or testimony to support their claims. Rather, they only presented unsubstantiated arguments to the trial court and an affidavit which did not support, their position. Therefore, even if the trial court had considered the merits of their claims, they failed to provide any proof to support those claims.
CONCLUSION
For the reasons stated above, we affirm the ruling of the trial court. Costs in this court are assessed to the defendants, James Keefer and Sarah Eve Keefer.
AFFIRMED.

. Harriss is representing himself, but is a member of the Louisiana State Bar Association.

. La. R.S. 13:3201 provides, in pertinent part:
A. A court may exercise personal jurisdiction over a nonresident, who acts directly or by an agent, as to a cause of action arising from any one of the following activities performed by the nonresident:
(1) Transacting any business in this state. La. R.S. 13:3204 states, in part:
A. In a suit under R.S. 13:3201, a certified copy of the citation ... and of the petition or a certified copy of a contradictory motion, rule to show cause, or other pleading filed by the plaintiff in a summary proceeding under Code of Civil Procedure Article 2592 shall be sent by counsel for the plaintiff, or by the plaintiff if not represented by counsel, to the defendant by registered or certified mail, or actually delivered to the defendant by commercial courier, when the person to be served is located outside of this state or by an individual designated by the court in which the suit is filed, or by one authorized by the law of the place where the service is made to serve the process of any of its courts of general, limited, or small claims jurisdiction.
[[Image here]]
C. Service of process so made has the same legal force and validity as personal service on the defendant in this state.
D. For purposes of this Section, a "commercial courier” is any foreign or domestic business entity having as its primary purpose the delivery of letters and parcels of any type, and which:
(1) Acquires a signed receipt from the addressee, or the addressee’s agent, of the letter or parcel upon completion of delivery.
(2) Has no direct or indirect interest in the outcome of the matter to which the letter or parcel concerns.

. Harriss later obtained a separate default judgment against Bell, which is not at issue here.

. The trial court questioned the clerk’s office employee present in court who stated that notice of the default judgment was mailed to the Keefers in Byron, Georgia, on August 22, 2011, and that the notice was not returned.

. The affidavit was objected to by Harriss, but the court made a comment that it was submitted, The document was never marked as filed into evidence. The Keefers supplemented the record with the affidavit. A notation on the evidence envelope states that the document was "found laying [sic] loose in a folder.”

.See Decca Leasing Corp. v. Torres, 465 So.2d 910 (La. App. 2 Cir. 1985), writ denied, 468 So.2d 1211 (La. 1985).

. The Keefers were required to furnish a sus-pensive appeal bond, which was set at $26,290.36. This was less than the actual judgment, but the trial court considered that the sheriff was holding $54,880.01 that had been garnished from Mr. Keefer's salary. On September 6, 2016, the Keefers filed a motion for summary judgment, motion to reduce appeal bond, and to void legal interest. They again sought to attack the merits of the default judgment and claimed that the garnishment was ongoing, resulting in the payment of more money than was necessary to satisfy the judgment. On September 12, 2016, the trial court held a hearing on these motions. The Keefers were allowed to participate by telephone. The trial court warned the parties about attempting to have ex parte communications with the court, and about failing to provide the court with a valid address where they could be reached. The Keefers gave the court their address, but requested that it be kept confidential. The trial court refused and denied their motions.
In conjunction with the suspensive appeal, the trial court later ordered that the funds being held by the CPSO not be released pending the outcome of the appeal.

. If timely presented, a motion for new trial may be an acceptable procedural vehicle for asserting the nullily of a judgment. See Pollock v. Talco Midstream Assets, Ltd., 44,629 (La.App. 2 Cir. 9/23/09), 22 So.3d 1033. In the instant case, the motion for new trial was not asserted within the time limits of La. C.C.P. art. 1974.

. La. C.C.P. art. 2002 states, in part:
A. A final judgment shall be annulled if it is rendered:
[[Image here]]
(2) Against a defendant who has not been ' served with process as required by law and who has not waived objection to jurisdiction, or against whom a valid judgment by default has not been taken.
[[Image here]]
C, Except-as otherwise provided in Article 2003, an action to annul a judgment on the grounds listed in this Article may be brought at any time.
The comments to this article provide that an action to annul a judgment for vices of form may be asserted collaterally and at any time.
La. C.C.P. art. 2004 states, in pertinent part:
A. A final judgment obtained by fraud or ill practices may be annulled.
B. An action to annul a judgment on these grounds must be brought within one year of the discovery by the plaintiff in the nullity action of the fraud or ill practices.
The comments to this article state that these grounds must be asserted in a direct action, not collaterally.